230 N.J. Super. 482 (1988)
553 A.2d 885
JACQUELINE SCAVONE, PLAINTIFF,
v.
CARMEN SCAVONE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County, Family Part.
Decided November 9, 1988.
*484 Robert Corcoran for plaintiff (Lamb & Corcoran, attorneys).
Joel Albert for defendant (Albert, Pescatore, & Shapiro, attorneys).
KRAFTE, J.S.C.
The process of law is a consistent evaluation caused by diverse circumstances and situations brought before our judicial system. Matrimonial courts have been called upon to address rights, settle disputes and fashion remedies regarding the equitable distribution of marital assets pursuant to statute. Since the inception of equitable distribution in 1971, the task of resolving disputes has evoked and been guided by equitable principles, perhaps the most significant of these being that equity will not suffer a wrong to be without a remedy.
Plaintiff Jacqueline Scavone and defendant Carmen Scavone were married on March 10, 1951. Three children were born of the marriage, all emancipated. The parties separated in 1984 and plaintiff filed a complaint for divorce in August of 1985. Defendant subsequently filed an answer and a counterclaim in September 1985 and January 1987 respectively.
*485 During the course of the marriage, defendant acquired a one-half ownership interest in a seat on the New York Stock Exchange. Title is in defendant's name alone. Both sides agree that the seat is marital property, subject to equitable distribution and is a passive asset whose value fluctuates with variable market conditions without regard to the contribution or effort of anyone in general or defendant in particular.
The pivotal controversy presented to this court for resolution is whether the value of the passive asset is measured as of the date the complaint for divorce was filed (August 1985) or at the time of distribution in 1988. Plaintiff asserts the current value, approximately $700,000, is the most appropriate while defendant contends the value as of the date the complaint was filed, $400,000, is the correct valuation date. There is no dispute regarding the actual worth of the asset at the aforementioned times. Therefore, there is a stipulated differential of $300,000. Since defendant is a 50% owner, the differential, for our purposes, is $150,000. Though there is no actual stipulation, it is evident that both parties view distribution as being equal. There has been no testimony to the contrary. Therefore, there is a real difference of $75,000, depending upon the date selected.
The concept of equitable distribution evolves as courts are presented with various types of marital assets and their accompanying questions of designating dates for valuation. Reliable parameters are evolving and although the use of a consistent date such as the filing of the divorce complaint has its advantages, such date cannot be deemed an absolute.
[I]n determining what is equitable the trial judge must consider all the particular circumstances of the individuals before it ... [and] [a] proper factor in that determination is any significant change in the valuation of marketable assets that occurs prior to final judgment. [Scherzer v. Scherzer, 136 N.J. Super. 397, 400 (App.Div. 1975) certif. den., 69 N.J. 391 (1976)].
Valuation of an asset at the time of trial itself is permissible, "depending on the nature of the asset and any compelling *486 equitable consideration." Bednar v. Bednar, 193 N.J. Super. 330, 332 (App.Div. 1984).
In view of the lack of uniformity and lack of definitive direction regarding incremental values, this court finds the dates of valuation for varying assets to be established as set forth in the following paragraphs.

I.

Passive, Immune Asset (Pre-marital, Gift, Inheritance) in One Name.
The clearest category of assets excepted from distribution pertains to the incremental value of passive assets acquired prior to the marriage or by way of gift or inheritance prior to or during the marriage. The immunity of assets acquired in such a manner is stated very clearly in N.J.S.A. 2A:34-23 and its accompanying statements.
However, all such property, real, personal or otherwise, legally or beneficially acquired during the marriage by either party by way of gift, devise or intestate succession shall not be subject to equitable distribution....
The Senate Judiciary Committee statement set forth the purpose of the amendment to N.J.S.A. 2A:34-23 as an exemption of gifts, devises and bequests from equitable distribution.
To permit a compulsory division of the asset between the recipient and his spouse is contrary to the marital expectations of the recipient and the giving parent or relative. Since the efforts of neither spouse resulted in the gift, devise or bequest, it need not be regarded as a marital asset under the partnership concept of marriage. [Senate Judiciary Committee statement to Assembly Bill 1229, L. 1980, c. 181]
Passive assets can be defined as those assets whose value fluctuations are based exclusively on market conditions. Passive, immune assets, in one name, and their incremental values are viewed as separate property and are thus not subject to distribution. Painter v. Painter, 65 N.J. 196, 214 (1974).
In Mol v. Mol, 147 N.J. Super. 5 (App.Div. 1977) the marital residence, owned by defendant-husband prior to the marriage was an example of a passive asset. The court stated that *487 plaintiff was "not entitled to share in that portion of the enhancement in value of the house which was due solely to inflation and to which she did not contribute in any way." Id. at 9. The action was remanded for findings of fact and conclusions distinguishing that portion of increased value which was the result of independent economic factors from "that portion to which plaintiff contributed or for which husband and wife were jointly responsible." Ibid.
This principle was relied upon by the Appellate Division in Wadlow v. Wadlow, 200 N.J. Super. 372, 381-382 (App.Div. 1985), in its consideration of a security account which was established by plaintiff's parents, segregated during the marriage and never intended to benefit defendant-husband. The Appellate Division held that "[t]he value of plaintiff's interest in the account was, thus, immune from distribution." Id. at 381.
Additionally,
... the income or other usufruct derived from such property, as well as any asset for which the original property may be exchanged or into which it, or the proceeds of its sale, may be traceable shall similarly be considered the separate property of the particular spouse. [Painter v. Painter, supra, 65 N.J. at 214].
Assuming a finding of an immune, passive asset, the court will not be called upon to select a date for equitable distribution, as there will be none.

II.

Active Immune Asset (Pre-Marital, Gift, Inheritance) in One Name.
Active assets involve contributions and efforts towards their growth and development which directly increase their value. Faced with determinations regarding active immune assets in one name, courts have examined the driving force behind the incremental growth. When the increase in value is brought about solely through the efforts of the owner, that value is undistributable, therefore no valuation date need be set. *488 Conversely, when such value is derived, in part or in whole, from the efforts of the non-owner, it is subject to distribution. Thus "the immunity of incremental value ... is not necessarily intended to include elements of value contributed by the other spouse, nor those for which husband and wife are jointly responsible." Id. at 214, n. 4. Hence, the valuation date in the second scenerio occurs at the time of distribution.
The increased value of active immune assets must be "considered eligible to the extent that it may be attributable to the expenditures or the effort of" the non-owner spouse and a determination must be made regarding the extent the original investment has been enhanced by contributions of either spouse. Scherzer v. Scherzer, supra 136 N.J. Super. at 401. The non-owner's spouse's contribution to the incremental value can be towards the mortgage paydown and would thus transform a 100% immune, pre-acquired asset to one to be included in equitable distribution, but for limited purposes. See Griffith v. Griffith, 185 N.J. Super. 382, 385 (Ch.Div. 1982).

III.

Passive and Active Assets in One Name Acquired in Contemplation of Marriage.
This category of assets requires analysis of the nature of the relationship between the parties, the extent of any participation by either person in the acquisition and subsequent maintenance of the asset and the intent of the parties regarding use of the property at the time of purchase. The question of premarital assets often arises with the purchase of real estate and the critical issue has become whether the value of such property will be subject to equitable distribution.
Coney v. Coney, 207 N.J. Super. 63 (Ch.Div. 1985) and Raspa v. Raspa, 207 N.J. Super. 371 (Ch.Div. 1985) evaluated the distribution potential of the parties' residence. In both situations, the parties had arranged for and purchased a home prior to their marriage, however, title was in one name only. Coney *489 determined that pre-marital property "occurs where one or both marital parties acquired either personal or real property jointly and made contribution to same before marriage." 207 N.J. Super. at 73. While Coney looked to the initiation of a marital relationship to determine that property obtained specifically for family use was property acquired during marriage pursuant to N.J.S.A. 2A:34-23, Raspa v. Raspa, supra, looked to principles of equity and stated:
... the rule of immunity of assets acquired prior to marriage [is] excepted where the marital partners jointly select and purchase an asset in contemplation of marriage and for the purpose of the marital enterprise.
Designation of title in the name of one of the parties should not bar a determination of the property's intended and active status as a marital asset. [Id., 207 N.J. Super. at 386]
Similarly to the parties in the aforementioned cases, the couple in Weiss v. Weiss, 226 N.J. Super. 281 (App.Div. 1988) purchased a home within months prior to the marriage ceremony, intended the home to be their marital residence and both subsequently maintained the property. The Appellate Division held that
... a marital partnership may be found to have commenced prior to the marriage ceremony, where the parties have adequately expressed that intention and have acquired assets in specific contemplation of their marriage. This conclusion recognizes that the "shared enterprise" of marriage may begin even before the actual marriage ceremony through the purchase of a major marital asset such as a house and substantial improvements to that asset. [Id. at 287]
Furthermore, the Appellate Division determined that the marital residence, a passive asset, was to be valued at the time of the trial.
The importance of the parties' relationship, prior to any property acquisition, is highlighted in Mangone v. Mangone, 202 N.J. Super. 505 (Ch.Div. 1985) and Rolle v. Rolle, 219 N.J. Super. 528 (Ch.Div. 1987). The parties, in each situation, had resided together for a prolonged period prior to the actual marriage ceremony. The parties in Mangone had begun their relationship in 1975, moved in together in 1977 and married in 1981. At the time of their divorce, plaintiff sought a distributive share of property acquired prior to the marriage. The *490 court held that plaintiff sought an expansion of the palimony contract and such distribution was specifically disallowed in Kozlowski v. Kozlowski, 80 N.J. 378 (1979), and Crowe v. DeGioia, 90 N.J. 126 (1982). Rolle stated, not only was prior-acquired property non-distributable, but other equitable remedies were more appropriate. The parties in Rolle had acquired their residence three months prior to their cohabitation, thus the purchase was made in contemplation of cohabitation, not marriage, which is one of the chief requirements.
The establishment of a marital partnership with the requisite intent that the asset is specifically for family use subjects the asset to equitable distribution. It follows logically that the asset will be valued in accordance with marital assets acquired during the marriage as set forth elsewhere herein.

IV.

Passive Joint Asset Acquired During Marriage.
A passive asset, acquired jointly during the marriage is subject to equitable distribution. Furthermore,
[i]f the asset increases in value between the time controlling for purposes of inclusion and evaluation, i.e. ordinarily the date of filing the complaint, and the time of actual distribution ordered by the Court, ... (and) [i]f the increase in value is simply due to market factors or inflation, each party should share equitably in the increment. [Bednar v. Bednar, supra, 193 N.J. Super. at 333]
One year later, the Appellate Division in Wadlow v. Wadlow, supra, noted the above cited portion of the Bednar decision and stated that the "trial court failed to account for the accretion in value of the property [marital home] between the date of the filing of the complaint and the time of the distribution order." 200 N.J. Super. at 384 This decision set forth the principle that the incremental value of the marital residence was purely the result of market factors and "the trial judge should have considered the appraisal value of the property at the time of the hearing." Id. at 385. The designation date for valuation of a passive joint asset acquired during marriage was thus established.

*491 V.

Active Joint Asset Acquired During Marriage.
A guiding principle for the distribution of the incremental value of a jointly-owned asset acquired during the marraige was set forth in Bednar v. Bednar, supra. Bad faith or fraud on the part of one partner or "[i]nterim accretions pending actual distribution due to the dilligence and industry of a party in possession of an asset, independent of identifiable market forces, should accrue to that party alone." Id., 193 N.J. Super. at 333. The act of filing the divorce complaint signifies the death of the marital relationship and simultaneously terminates the non-participatory spouse's proportionate share of the asset's heightened value.

VI.

Active Asset Acquired During Marriage in One Name.
One of the main purposes of N.J.S.A. 2A:34-23 was to enable the courts to allocate marital assets between spouses at the time of their divorce. At the outset, our Supreme Court stated:
[t]he judicial task [of equitable distribution] may upon occasion be a difficult one but it will hardly be novel. Seeking just and equitable results is and has always been inherent in the judicial function; it has been a chief concern of the courts for many centuries. [Painter v. Painter supra, 65 N.J. at 209]
Painter advised that judicial interpretation on a case-by-case basis, as needed, can supply specific guidelines to govern particular situations. Id. at 213-214.
The court now addresses the valuation date of an active asset acquired in one name during the marriage. Applying the well-reasoned decisions found in the chronicle of cases in prior sections, this court finds that the incremental value subject to equitable distribution should be determined as of the date the complaint for divorce is filed. The filing declares the irretrievable breakdown of the relationship and provides a precise date for the termination of the marriage. Brandenburg v. Brandenburg, *492 83 N.J. 198 (1980). By its very nature, an active asset's increase or decrease in value is a direct result of the attention, time, energy and devotion of the sole owner. Therefore, this court acknowledges its predecessors in stating that, if one spouse labors or makes waste of an asset, it is that spouse who ought to reap any benefit or suffer any loss which occurs as a direct consequence of effort and time exerted.

VII.

Passive Asset Acquired During Marriage in One Name.
In direct opposition to an active asset, a passive asset will rise or fall in value regardless of the attention, time, energy or devotion of its owner. The value of such an asset is dependent exclusively upon market factors.
Since evolvement of matrimonial law has been towards concepts of sharing and includibility, this court holds that the incremental value of a passive asset acquired in one name during the time of the marriage shall be determined as of the date of the trial. To do otherwise would be unjust and inequitable as one spouse would either reap a windfall or suffer a loss which was not of his or her doing.
To summarize the distribution and evaluation dates of the incremental value of assets:
I. Passive, Immune Asset (Pre-Marital, Gift, Inheritance) in One Name:

not distributable.
II. Active Immune Asset (Pre-Marital, Gift, Inheritance) in One Name:

A) if increase solely through the efforts of owner: not distributable,
B) if increase partially or solely through the efforts of non-owner: distributable as of date of distribution.
III. Passive and Active Assets in One Name Acquired in Contemplation of Marriage:

A) passive assets are distributable and incremental value is determined at the time of distribution,
B) active assets are distributable and valuation is determined as of the date of the complaint.
IV. Passive Joint Asset Acquired During Marriage:

distributable and valuation is determined at the time of distribution.

*493 V. Active Joint Asset Acquired During Marriage:

A) barring fraud or bad faith the incremental value is distributable and determined at the time of distribution; unless
B) the increment is the result of active management of one with no participation by the other, then valuation of the asset is determined as of the date of the complaint.
VI. Active Asset Acquired During Marriage in One Name:

distributable and determined as of the date of the complaint.
VII. Passive Asset Acquired During Marriage in One Name:

distributable and incremental value is determined at the time of distribution.
Applying these principles and conclusions to the case at bar, it becomes evident that the stock exchange seat is a passive asset acquired during marriage in the name of defendant only. Therefore, valuation of defendant's seat on the New York Stock Exchange will be determined as of the date of distribution at which time it was evaluated at $700,000.