243 N.J. Super. 134 (1990)
578 A.2d 1230
JACQUELINE J. SCAVONE, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
CARMINE D. SCAVONE, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 9, 1990.
Decided May 17, 1990.
*135 Before Judges PETRELLA, O'BRIEN and HAVEY.
Albert, Pescatore & Shapiro, attorneys for appellant (Joel M. Albert on the brief).
Lamb & Corcoran, attorneys for respondent (Robert T. Corcoran, of counsel and on the brief with Michele A. McGuire).
PER CURIAM.
In this matrimonial litigation, defendant ex-husband appeals from those portions of the judgment of divorce distributing the *136 marital assets and awarding alimony. Specifically, defendant contends that the trial court erred in valuing defendant's seat on the New York Stock Exchange (NYSE) as of the date of trial, rather than the date the complaint was filed or in the alternative, as of the date defendant's partner sold his one-half interest. Defendant also argues that the trial court erred in failing to consider the tax consequences of the equitable distribution award and other pertinent criteria in distributing the assets. Finally, defendant argues that the trial court's award of alimony was excessive.
Plaintiff ex-wife cross-appeals, contending that the trial court abused its discretion in denying her application for counsel fees. We affirm.
After 37 years of marriage, the parties were divorced following a lengthy trial by judgment dated November 29, 1988.[1] During the course of the marriage defendant acquired a one-half ownership interest in a seat on the NYSE. Both parties agree that the seat is not only marital property, but is an asset which is subject to fluctuations based on "market conditions." As of the date of the filing of the complaint, August 22, 1985, the value of the seat ranged from $350,000 to $400,000. Its value reached in excess of $1,000,000 in 1987. In September 1988, defendant's partner sold his 50% share in the NYSE seat for $250,000. As of the date of the trial, October 12, 1988, it was stipulated that the value of the seat was $700,000.
Judge Krafte fixed the value of defendant's one-half interest in the NYSE seat at $350,000, representing one-half of its value as of the trial date. 230 N.J. Super. 482, 493, 553 A.2d 885. After analyzing conceptual differences between "active" and "passive" marital assets, the judge reasoned that defendant's NYSE seat "is a passive asset acquired during marriage" *137 whose fluctuation in value from the date of the complaint to the date of trial was due to market conditions, unrelated to any efforts or input by either party. Ibid. Thus, citing Bednar v. Bednar, 193 N.J. Super. 330, 474 A.2d 17 (App.Div. 1984) and Wadlow v. Wadlow, 200 N.J. Super. 372, 491 A.2d 757 (App.Div. 1985), he concluded that the valuation date should be the trial date, rather than the complaint filing date.
The parties essentially agreed as to the value of the remaining marital assets, including the marital home, which, together with defendant's interest in the NYSE seat, totalled $669,940. The judge concluded that each party was entitled to one-half of the marital assets. He accordingly distributed $334,970 to plaintiff, including proceeds of the sale of the marital residence. Defendant was given his interest in the NYSE seat, various life insurance policies and a balance remaining in his Keogh Plan after distribution of a portion to plaintiff. The judge also awarded alimony to plaintiff in the amount of $1,581 per month from November 1, 1988 through May 31, 1989, and thereafter $1,330 per month.
We find no error in Judge Krafte's method of valuation. In Bednar, we noted that there was no iron-clad rule for determining the date of valuation of marital assets but "use of a consistent date is preferable, such as the filing of the complaint[.]" 193 N.J. Super. at 332, 474 A.2d 17. However, we stated that "[t]he question of enhancement or accretion in value pending distribution is separate[,]" and we distinguished between an increase in value caused by market factors or inflation and an enhancement which is the result of the "personal industry of the party controlling the asset[.]" Id. at 333, 474 A.2d 17. We held that "[i]nterim accretions pending actual distribution due to the diligence and industry of a party in possession of an asset, independent of [the] market forces," should accrue to that person alone, but where the enhanced value is attributable to market factors or inflation, "each party should share equitably in the increment[.]" Ibid.; see also Wadlow, supra, 200 N.J. Super. at 384, 491 A.2d 757 (defendant *138 entitled to share in increase in value to marital home from date of filing of the complaint to date of hearing, since the increase was caused solely by market factors).
Here, the judge properly concluded that the NYSE seat was a passive asset whose value increased from the date of the filing of the complaint to the date of trial. His determination that the increase in value was caused solely by market factors is well-founded in the evidence. Defendant conceded that the most important factor in determining value of the seat is the "market forces" and whether or not he works on the stock exchange floor has no influence on the seat's value. Since the increment in value was caused solely by market forces and not by defendant's efforts or diligence, it was not an abuse of discretion to apply the trial-date value. We therefore affirm Judge Krafte's determination fixing the value of the NYSE seat as of the date of trial substantially for the reasons expressed in his opinion reported at 230 N.J. Super. 482, 553 A.2d 885.
We also reject defendant's alternative argument that the trial court should have fixed the value of defendant's interest in the seat at $250,000, the amount defendant's partner received in September 1988 from the sale of his one-half interest. However, defendant partner's was a limited partner and the evidence suggests that he sold his interest for less than fair-market value because defendant intended to lease the seat, and the partner, living in Michigan, would not be able to oversee the lease. Therefore, the transaction was not representative of the seat's true value.
Defendant next complains that Judge Krafte erred in failing to consider the tax consequences on the hypothetical, future sale of the NYSE seat. Defendant notes that he purchased the seat for $42,500, and any future sale of the seat will cause a "tremendous tax liability" that should have been considered in the distribution of the marital assets.
*139 We held in Orgler v. Orgler, 237 N.J. Super. 342, 568 A.2d 67 (App.Div. 1989), that while hypothetical taxes should not be deducted from the value of marital assets, potential tax consequences arising out of the future sale of marital assets is a factor that should be considered in the overall equitable distribution scheme. Id. at 356, 568 A.2d 67. However, we stressed that there must be an evidentiary basis for the hypothetical tax consequence "presumably fixed by competent expert testimony" before it is considered as a factor in determining the distributive share of each party. Ibid. See also N.J.S.A. 2A:34-23.1 (a court shall apply the pertinent factors in distributing assets and "shall make specific findings of fact on the evidence[.]" [Emphasis added]).
Here, the judge properly declined to consider hypothetical taxes because no evidence, expert or otherwise, was adduced to permit him to make findings as to the hypothetical tax impact. There was no evidence that defendant intended to sell the seat in the foreseeable future. Indeed, he testified that he leased the seat "to get out of the pressure cooker" and at the same time "use my asset ... as an income." Thus, the possibility of future sale of the seat was entirely speculative, as was the price for such a sale and the federal and state tax consequence resulting therefrom.
Defendant next claims that it was an abuse of discretion to distribute the NYSE seat to him and all of the "liquid assets" to plaintiff. He suggests that a "more reasonable ... determination" would have been to place a lien in plaintiff's favor on defendant's NYSE seat to be paid when the seat was sold or upon defendant's death, and distribute to him some of the liquid assets. However, immediate final resolution of the method of equitable distribution is to be encouraged. Moore v. Moore, 114 N.J. 147, 161-162, 553 A.2d 20 (1989). "Long-term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible." *140 Kikkert v. Kikkert, 177 N.J. Super. 471, 478, 427 A.2d 76 (App.Div.), aff'd o.b. 88 N.J. 4, 438 A.2d 317 (1981); see also Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443, 393 A.2d 583 (App.Div. 1978).
Moreover, this is not a case where a party is left with an asset, such as raw land, which is incapable of generating income. Leasing of the seat provides defendant with an immediate and generous source of income. Finally, defendant is not required to make a cash payment to plaintiff for her equitable share in the NYSE seat. Instead, Judge Krafte reasonably ordered distribution of other assets to plaintiff in lieu of a cash payment by defendant for plaintiff's share of the seat. We cannot say that the judge mistakenly exercised its broad authority in the manner by which the assets were distributed. See Wadlow, supra, 200 N.J. Super. at 377, 491 A.2d 757. Our careful review of the judge's findings satisfies us that it conscientiously applied the factors under Painter v. Painter, 65 N.J. 196, 211-212, 320 A.2d 484 (1974) and N.J.S.A. 2A:34-23.1. Also, the judge's findings, in applying the criteria, are clearly grounded in the evidence.
We also find no reason to disturb the alimony award. Judge Krafte estimated defendant's net monthly income from his lease of the NYSE seat and Keogh Plan to be $4,210. It also considered the fact that plaintiff at the time of trial was 59-years old and unemployed. Further, it considered the duration of the marriage, the parties' standard of living during the marriage and their present monthly expenses. See Lepis v. Lepis, 83 N.J. 139, 150, 416 A.2d 45 (1980); Bonanno v. Bonanno, 4 N.J. 268, 274-275, 72 A.2d 318 (1950). Considering the parties' pre-divorce standard of living, plaintiff's age, her needs and the probability that her earnings will not substantially improve in the future, as well as defendant's present income, we cannot say that the alimony award was excessive. See Lepis, supra, 83 N.J. at 152, 416 A.2d 45.
*141 In her cross-appeal, plaintiff argues that the judge erred in denying her application for counsel fees. Her counsel submitted a certification detailing the time and nature of his legal work and disbursements for which he sought a counsel fee in the amount of $38,205.30, plus fees of $464.74 owed to another law firm for its services and $687 to an accountant. Plaintiff argues that a substantial amount of the fees incurred were because of defendant's "recalcitrant position" in refusing to disclose his financial worth.
We find no abuse of discretion in denying plaintiff's application. It is true that a portion of the fees were incurred as a result of discovery and enforcement motions necessitated by defendant's failure to disclose documents as to his assets. However, the judge awarded plaintiff nearly $335,000 in liquid assets. Defendant in turn received the "non-liquid" NYSE seat. Approximately one-third of defendant's net income from the seat is paid to plaintiff as alimony. While his present resources are limited, he nevertheless faces substantial counsel fees himself generated from this litigation. Moreover, even if part of the fees were generated because of defendant's "recalcitran[ce]," absent here is an adequate showing of need and a mistaken exercise in discretion in ordering the parties to pay their own fees. Plaintiff's application for counsel fees was therefore properly denied. See Chalmers v. Chalmers, 65 N.J. 186, 195, 320 A.2d 478 (1974); Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Mayer v. Mayer, 180 N.J. Super. 164, 169, 434 A.2d 614 (App.Div.), certif. den. 88 N.J. 494, 443 A.2d 709 (1981).
Affirmed.
NOTES
[1] Three children were born of the marriage. However, as of the date of the divorce, all were emancipated, and hence no support or custody issues were raised.