244 N.J. Super. 668 (1990)
583 A.2d 395
MICHAEL DOTSKO, PLAINTIFF-RESPONDENT,
v.
CHARLENE DOTSKO, DEFENDANT-APPELLANT.
MICHAEL DOTSKO, PLAINTIFF-APPELLANT,
v.
CHARLENE DOTSKO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1990.
Decided December 7, 1990.
*669 Before Judges DREIER, ASHBEY and LANDAU.
Michael Dotsko appeared pro se.
Caryl Wolfson Leightman argued the cause for respondent (Caryl Wolfson Leightman, on the brief).
The opinion of the Court was delivered by ASHBEY, J.A.D.
*670 For purposes of this opinion, we have consolidated two appeals from the Family Part. Michael Dotsko appeals pro se from a judgment of divorce and incidental Family Part rulings. Defendant Charlene Dotsko separately appeals concerning a reservation of counsel fees in a post-divorce motion.
Michael and Charlene Dotsko were married on October 19, 1980, and separated on June 21, 1986. On June 24, 1986, Michael filed a complaint to "enforce parental rights," concerning the parties' son, then almost five years old. Some 16 motions preceded a five-day trial, and a decision was rendered on March 30, 1989. In the ensuing May 8, 1989 dual judgment of divorce, Charlene was awarded sole legal and residential custody of the child; Michael was awarded visitation. The judge ordered support for the child. He also denied Michael's application for a retroactive reduction of the pendente lite support order; directed Michael to pay Charlene the sum of $43,600 to balance equitable distribution; denied Michael reimbursement for any tax liability incurred in 1986 when the parties filed a joint tax return and ordered Michael to pay $20,000 towards defendant's legal and expert fees and costs.
Respecting the financial issues, the judge found the total available marital estate to be $131,000.[1] He described the following as relevant factors.
The plaintiff-husband is almost 39 years old; the defendant-wife is almost 37. He's an accountant and an attorney who worked throughout the marriage. His last job ended July 1988 and was as a tax director for the K Corporation at a salary in excess of $70,000 annually.
The defendant-wife has an associate degree in advertising and communication. She last worked at Montgomery Ward at a salary of approximately $16,000. That was in 1981 and the defendant has not worked since then.
* * * * * * * *

*671 [T]his is not a permanent alimony case, notwithstanding the substantial difference in the parties' education and ability to earn.
It could, however, be a rehabilitative alimony case, but it is more properly a case which requires an unequal distribution of assets to allow the defendant to reestablish herself while re-entering the employment market.

It's this Court's view that based on the testimony presented income must be imputed to both parties and an adjustment from assets must be made in lieu of rehabilitative alimony, primarily because this is one way the Court can be sure of Mrs. Dotsko's receiving same and because there was really no specific testimony regarding what the defendant's rehabilitation would be or what it would cost.
I also note that Mrs. Dotsko has in reality been receiving rehabilitative alimony by way of the pendente lite alimony and child support award and she has not sought to obtain any employment during that time. I will therefore impute an income of approximately $20,000 to Mrs. Dotsko and an income of $50,000 to Mr. Dotsko. Both parties should be able to earn these amounts within the very near future and I'll deal with the unequal distribution of assets in lieu of rehabilitative ... alimony when I order equitable distribution.
* * * * * * * *
It's clear to me after hearing this case that the plaintiff has not made the requisite effort he should have to have obtained employment after his employment terminated, and I find in fact that he intentionally did not resume employment but held out for the perfect job even though he could have obtained reasonable employment at somewhat less income than he was previously earning.
Anyone who sat through this trial has no problem determining that Mr. Dotsko has chosen to place himself in the economic condition he currently is. Many of the facts in this case fits squarely with cases indicated in the defendant's attorney's brief of Aribe, Bonnano, Robbins, Lynne, (phonetic) [sic][2] and others, all of which refuse to allow a litigant to escape his obligations by his own dilatory actions.
* * * * * * * *
The only money which is not subject to equitable distribution is the $10,000 Mr. Dotsko received from his father and interest of approximately $2,000 thereon, which was placed in a bank account in Mr. Dotsko's own name. The funds already in that account, which totaled approximately $20,000, although gifted to Mr. Dotsko, were first placed in the parties' joint names and therefore subject to equitable distribution.

*672 The Court of course will consider the source of those $20,000-plus as well as the source of all funds acquired during the marriage, as well as the other criteria enumerated in Painter v. Painter and the recent New Jersey Statute.
But considering those, except for the adjustment in lieu of rehabilitative alimony, I find there should be an essentially equal division of assets despite the source of acquisition favoring the plaintiff because of the great disparity in the parties' ability to earn income and their respective educations and degrees.
* * * * * * * *
Of this amount [$171,000 of which $131,000 was available for equitable distribution], I determine that Mrs. Dotsko should receive 60 percent or $102,600 and Mr. Dotsko should receive 40 percent or $68,400. This in essence is a $17,000 non-taxable award to the defendant since the award shall be deemed equitable distribution as opposed to rehabilitative alimony.
* * * * * * * *
[Michael] may then retain the balance of the bank accounts in his possession which should total approximately $57,400 after he makes the payment to [Charlene] of 43,600....
* * * * * * * *
With respect to counsel fees, I don't think it's necessary for me to reiterate all the things I said previously. I've carefully reviewed the affidavits and certifications and the expenses involved. This case was truly a ... a disgrace, the ... the type of money that was spent had to be spent, and I find that it was substantially because of unreasonable positions taken by Mr. Dotsko. I also find that his ability to earn is considerably greater than Mrs. Dotsko's, considerably greater, and that he will, although getting less in equitable distribution than she is, will very quickly be able to make up the difference through his much greater earning capacity.
On the other hand, I don't think it would be totally fair for him to have the entire burden of the enormous expenses in this case, and taking all these things into consideration, I'm ordering that he pay counsel fees and expert fees and costs to Mrs. Dotsko in the amount of $20,000. And that's also to be paid immediately out of the funds in his possession. [Emphasis added]
Michael's points on appeal are:
Point I
The trial judge erred in deciding that $20,000 of gifts to him and approximately $5,700 interest earned thereon were available for equitable distribution.
Point II
The trial judge erred in excluding $4,500 of 1986 mid-year income tax liabilities from the equitable distribution calculation.
Point III
The trial judge erred in excluding $3,500 in income tax liabilities he incurred on post-complaint interest income, most of which was awarded to Charlene, from the equitable distribution calculation.

*673 Point IV

The trial judge abused his discretion in awarding sixty (60) percent of the marital assets to Charlene.
Point V
The trial judge erred in failing to modify pendente lite support retroactively to July 16, 1988.
Point VI
In awarding $20,000 in counsel fees, expert fees and costs to Charlene, the trial judge:
A. Erred by improperly disregarding R. 4:42-9(b) and (c);
B. Erred in failing to hold a plenary hearing;
C. Abused his discretion; and
D. Erred by imposing a sanction upon the plaintiff.
We are satisfied that Michael's Points II, III and V are meritless. R. 2:11-3(e)(1)(A) and (E).
His remaining points require discussion. At issue in Michael's first point are two monetary "gifts" received by Michael during the course of the marriage. On December 28, 1985, Michael received $10,000 in cash from his father ("father's gift # 1"). That day he also received a $10,000 check from his aunt ("aunt's gift"). Michael deposited the $20,000 in a City Federal Money Market checking account held in his and Charlene's joint name. On January 14, 1985, Michael received a $10,000 check from his father ("father's gift # 2"). At trial Michael's father and aunt testified they made these gifts to Michael and that they were not intended for Charlene.
On January 15, 1986, Michael opened a certificate of deposit at First Atlantic Savings, in the name of "Michael J. Dotsko POD Charlene Dotsko." The opening balance was $30,066.56, consisting of a check from the joint account in the amount of $20,066.56, (father's gift # 1 and aunt's gift), plus $66.56 of interest and his father's $10,000 gift # 2. At the time of trial, this CD had a balance of $37,309.00. As noted, the trial judge ruled that the January 14 "father's gift # 2" was exempt from equitable distribution, but that the earlier $20,000 was not. Michael urges that this sum was also exempt.
*674 In the context of the marital estate, the concept of gift has a particular significance. N.J.S.A. 2A:34-23 as Amended by L. 1980, c. 181 provides that:
property, real, personal or otherwise, legally or beneficially acquired during the marriage by either party by way of gift, devise, or intestate succession shall not be subject to equitable distribution, except that interspousal gifts shall be subject to equitable distribution.
The record supported only one conclusion, that Michael's father and aunt intended to benefit Michael alone. The issue was whether he made an interspousal gift. In ruling that there was an interspousal gift, the trial judge relied entirely upon Michael's action in placing the 1985 gifts into a joint account for two weeks over the end of 1985 and the beginning of 1986.
Proof of gift requires evidence of unequivocal donative intent on the donor's part, actual or symbolic delivery of the gift's subject matter, and the donor's absolute and irrevocable relinquishment of ownership. In re Dodge, 50 N.J. 192, 216, 234 A.2d 65 (1967). See Pascale v. Pascale, 113 N.J. 20, 29, 549 A.2d 782 (1988). On appeal Michael urges that Charlene had no control over the money during those two weeks because she did not even know the money was available to her. He controlled all the bank accounts, joint or not.
Michael, however, did not take this position at trial. Although the order is not appealed from, this was a contested custody case, with over 800 pages of testimony and three experts testifying. Upon being questioned by the judge, Michael admitted that he was not entirely prepared for the equitable distribution issues. In addition, the first portion of Charlene's testimony was contained in a tape which was found to be blank, and her testimony was reconstructed.
In fact, however, the parties' relevant appellate positions on the gift issue are the reverse of their trial positions. As part of her divorce and custody claim Charlene averred that Michael had always controlled the family finances, to the point of examining all of her grocery receipts and tearing napkins in half to save money. Michael had a history of investing in *675 certificates of deposit to accord with the best interest rates. Their son had money which Michael managed and for which he was the sole custodian. Both parties maintained IRA accounts in the name of each which Michael managed. Thus the record contains references to accounts in different names at different times, orchestrated by Michael. Yet, at trial, Michael rejected the allegation that he "controlled" the finances. He admitted he had control of the bank books up until a "certain point." Moreover, it was undisputed that Charlene obtained possession of the bank books when they separated and she had attempted to close out all of the them.[3] This action on her part caused Michael to follow her and attempt to freeze the accounts. It is a fair inference from their conduct at that time, however, that while the bank books were not hidden from Charlene, her action in taking control of them was so out of character in the marriage that Michael would not have anticipated her doing so in December 1985 or January 1986.
It is also a fair inference that Michael, the lawyer-accountant, was aware of the tax law and was responsible for the gift form to him. Although he did not testify concerning the tax effect of his father's making one $10,000 gift to him in December 1985 and another in January 1986, Michael's father testified that he read about the legal consequences of the gifts in the newspaper, and this was in connection with IRS. Michael's father had also made a similar year-end gift to his grandchild (the child of the marriage) and to Michael's sister.[4] The tax consequences of the pattern is further evidence that if Michael planned the form, he did not intend to benefit Charlene since $20,000 could have been given to two people at one time during one calendar year without gift tax consequences. See 26 U.S.C.A. sec. *676 2503(b). Finally, when Michael withdrew the money from the checking account, he withdrew the exact amount of interest earned on these funds for the 18 day period.
In Painter v. Painter, 65 N.J. 196, 214, 320 A.2d 484 (1974), the Court said that the burden of proof to establish the immunity of an asset from distribution rests upon the spouse asserting the immunity. In Landwehr v. Landwehr, 111 N.J. 491, 545 A.2d 738 (1988) (personal injury recovery for pain and suffering not equitably distributable), however, the Court interpreted the 1988 gift and inheritance exclusion from equitable distribution as evidence of a legislative policy that the Court's Painter interpretation of marital property might have been too broad. Id. at 498-499, 545 A.2d 738. Nonetheless, nothing in the statute or cases changes the law that it was Michael's burden to establish that any property acquired during the marriage was exempt. The question is whether he met that burden. See Shayegan v. Baldwin, 237 N.J. Super. 47, 51, 566 A.2d 1164 (App.Div. 1989) (evidence of Iranian custom regarding interspousal separate funds along with uncontradicted testimony of intent and conduct rebutted presumption of interspousal gift).
Contrary to the judge's conclusion, it appears to us that the evidence of monies deposited into a joint account for approximately 18 days was insufficient to overcome the contrary evidence. Gifts made exclusively to Michael not only reflected the donors' intent but his as well. He did not intend to make an interspousal gift by merging cash and checks in the joint account over the holidays while waiting for a new gift in the new year. We find that the exempt gifts did not become subject to equitable distribution. See Wadlow v. Wadlow, 200 N.J. Super. 372, 380, 491 A.2d 757 (App.Div. 1985). Contrast Winer v. Winer, 241 N.J. Super. 510, 527, 575 A.2d 518 (App. Div. 1990) (sufficient credible evidence existed to support a finding that condominium, bought prior to the marriage by defendant-husband with monies from his inheritance but which was occupied by the couple for approximately a year and a half after marriage, was purchased in specific contemplation of *677 marriage and was thus subject to equitable distribution). We also agree, as Michael further urges, that the interest earned on these immune accounts was not subject to distribution. See Scavone v. Scavone, 230 N.J. Super. 482, 486, 553 A.2d 885 (Ch.Div. 1988), aff'd, 243 N.J. Super. 134, 578 A.2d 1230 (App. Div. 1990).
Michael also claims that the trial judge abused his discretion in awarding sixty (60) percent of the marital assets to Charlene. The trial judge characterized asset distribution as in lieu of rehabilitative alimony, although his findings indicated that rehabilitative alimony was not an appropriate concept and his order rejected alimony.
Under case law "rehabilitative" alimony is alimony payable for a terminable period of time when it is reasonably anticipated that a spouse will no longer need support. Kulakowski v. Kulakowski, 191 N.J. Super. 609, 611, 468 A.2d 733 (Ch.Div. 1982); see also Smith v. Smith, 224 N.J. Super. 559, 561-562, 540 A.2d 1348 (Ch.Div. 1988).
N.J.S.A. 2A:34-23b provides that the court may award rehabilitative alimony based on a series of factors, including: need and ability to pay, duration of the marriage, age and health, standard of living established in the marriage, earning capacities and educational levels, length of absence from the job market and custodial responsibilities of children, time and expense necessary to acquire education, history of financial and non-financial contributions (including contributions to the care of the children) and the equitable distribution ordered. The statute further provides that in any case in which there is a request for an award of rehabilitative or permanent alimony, "[t]he court shall consider and make specific findings on the evidence about the above factors." Id.
N.J.S.A. 2A:34-23.1 contains the minimum factors to be considered by the trial judge when considering equitable distribution.

*678 In making an equitable distribution of property, the court shall consider, but not be limited to, the following factors:
a. The duration of the marriage;
b. The age and physical and emotional health of the parties;
c. The income or property brought to the marriage by each party;
d. The standard of living established during the marriage;
e. Any written agreement made by the parties before or during the marriage concerning an arrangement of property distribution;
f. The economic circumstances of each party at the time the division of property becomes effective;
g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage;
h. The contribution by each party to the education, training or earning power of the other;
i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a party as a homemaker;
j. The tax consequences of the proposed distribution to each party;
k. The present value of the property;
l. The need of a parent who has physical custody of a child to own or occupy the marital residence and to use or own the household effects;
m. The debts and liabilities of the parties;
n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse or children; and
o. Any other factors which the court may deem relevant.
Nothing in these two statutes suggests that equitable distribution should replace rehabilitative alimony. Although the need for alimony is related to the extent of equitable distribution, and there is a certain overlap, the judge did not refer to unequal distribution based on Charlene's need under N.J.S.A. 2A:34-23.1(f) and (g) except that the purpose was to allow the defendant to reestablish herself while re-entering the employment market.[5] Nothing suggested any relationship between *679 the sum and a time period which it represented, whether for Charlene to be trained or to find a job.
We recognize the judge may have meant to provide some security for child support. The judge found as a fact,
Mr. Dotsko had placed himself without employment making him potentially a litigant who would escape his obligations by his own dilatory actions.[6]
That determination, evidentially based, must be respected. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). As to its consequence, see Bonanno v. Bonanno, 4 N.J. at 275, 72 A.2d 318 and Arribi v. Arribi, 186 N.J. Super. at 118, 451 A.2d 969. N.J.S.A. 2A:34-23 provides that after the judgment of divorce, the court may require "[r]easonable security for the due observance of ... orders [for support]." If no security is given or upon default, the court may sequester the defaulting party's personal estate. Ibid. However, the $17,000 difference which the judge allotted to Charlene from Michael's share was not designated as security for any obligation and was not set aside for periodic payment. It was permanently and totally lost to Michael, no matter how current he was with his other obligations or how little it was needed by Charlene. Had she remarried, Michael would have had no basis to challenge the continuation of rehabilitative alimony under N.J.S.A. 2A:34-25. See Lynn v. Lynn, 165 N.J. Super. at 342, 398 A.2d 141; compare Mahoney v. Mahoney, 91 N.J. 488, 504, 453 A.2d 527 (1982). The unequal distribution did not accord with the statutory requirements and must be reconsidered.
Michael also challenges the $20,000 counsel and expert fee award, primarily because no certification was provided. R. 4:42-9(b), as amended January 19, 1989, effective February 1, 1989, provides that applications or fee allowance must be supported by an affidavit of services addressing the factors enumerated in RPC 1.5(a). RPC 1.5(a) says that the factors in *680 assessing the reasonableness of a lawyer's fee include: time, novelty, skill, likelihood (if apparent to client) that other employment was precluded, customarily charged fees in the locality, amount involved and results obtained, time limitations imposed by the client or by the circumstances; nature and length of professional relationship and whether fee is contingent (not permitted in divorce actions).
Under our case law, fees and costs are awarded within the sound discretion of the court. R. 4:42-9(a)(1). See Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Salch v. Salch, 240 N.J. Super. 441, 444, 573 A.2d 520 (App.Div. 1990); Mayer v. Mayer, 180 N.J. Super. 164, 169, 434 A.2d 614 (1981), certif. denied 88 N.J. 494, 443 A.2d 709 (1981). Michael claims he was punished by the judge for his custody challenge. We disagree. Michael's reliance on the case of Christopher-Frederickson v. Christopher, 223 N.J. Super. 303, 310, 538 A.2d 830 (App.Div. 1988), is misplaced. The record of three years of litigation, countless motions, letters and cross-motions, including some 600 pages of appendices persuades us that Michael's challenge respecting his contribution to Charlene's more than $60,000 in counsel and expert fees is not sufficiently merited to justify a hearing.[7] Thus, although defense counsel failed to file a required certification, we find any error harmless.
Defendant Charlene Dotsko appealed separately from a post-divorce January 4, 1990 order which denied her a requested $250 in counsel fees without prejudice, on the grounds that she had a right to include this request with other post-judgment applications before the Appellate Division. R. 2:11-4 provides that an application for a fee for legal services rendered on appeal shall be made by motion supported by affidavits as prescribed by R. 4:42-9(b) and (c), and fees may be allowed by the appellate court in its discretion in all actions in which an award of counsel fee is permitted by R. 4:42-9(a).
*681 R. 4:42-9(a)(1) provides that in a family action the court in its discretion may make an allowance pendente lite and on final determination on any claim for, among other things, visitation, and equitable distribution. R. 4:42-9(a)(8) provides for counsel fees as permitted by statute.[8]
Counsel fees in family actions are now provided for by statute. N.J.S.A. 2A:34-23, as amended by L. 1988, c. 153, provides that the court may order the payment of a retainer for expert and legal services "when the respective financial circumstances of the parties make the award reasonable and just," and
Whenever any other application [than for payment of a retainer] is made to a court which includes an application for pendente lite or final award of counsel fees, the court shall determine the appropriate award for counsel fees, if any, at the same time that a decision is rendered on the other issue then before the court and shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.[9]
Motions for these counsel fees, however, should be heard by the judge who presided over the issues which impelled the motion. Salch v. Salch, 240 N.J. Super. 441, 444, 573 A.2d 520 (App.Div. 1990). We have also recently ruled,
"Applications relative to costs and allowances of counsel fees are to be made in the court in which the costs accrued or the services claimed for were rendered." Tooker v. Hartford Accident and Indemnity Co., 136 N.J. Super. 572, 578 [347 A.2d 371] (App.Div. 1975), certif. den. 70 N.J. 137 [358 A.2d 184] *682 (1976). [Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 614, 581 A.2d 91 (App.Div. 1990)]
Based on these precedents, we agree with Charlene that there was no authority for the trial court to postpone ruling on her motion respecting fees incurred in post-judgment proceedings, and there is no authority for them to be considered by us on appeal.
In sum, we agree with Michael that $20,000 of gift to him was not an interspousal gift and should have been exempt from equitable distribution, along with related interest. Equitable distribution must be modified to reflect the removal of this asset from the marital estate. We have detailed the somewhat conflicting findings concerning Charlene's need for rehabilitative alimony. Changes in need for alimony are implicated by changes in equitable distribution. Dugan v. Dugan, 92 N.J. 423, 428, 457 A.2d 1 (1983). The judge should re-examine that need based on the principles of N.J.S.A. 2A:34-23b, as well as the need and terms of any security therefor and for child support. The matter is remanded for that purpose and to set counsel fees on post-judgment applications.[10] Any additional counsel fees should be supported by a certification of services. The order is otherwise affirmed.
NOTES
[1] While there is controversy concerning whether this sum included exempt assets, the total is not disputed. These assets were liquid. There was no marital residence.
[2] We consider this a reference to Arribi v. Arribi, 186 N.J. Super. 116, 118, 451 A.2d 969 (Ch.Div. 1982); Bonanno v. Bonanno, 4 N.J. 268, 275, 72 A.2d 318 (1950), Lynn v. Lynn, 165 N.J. Super. 328, 342, 398 A.2d 141 (App.Div. 1979), certif. denied 81 N.J. 52, 404 A.2d 1152 (1979). We are unable to discern what case was intended by "Robbins".
[3] Only banking officers and the title to the accounts prevented her from doing so.
[4] While Michael's father had some idea of the tax consequences, there is a suggestion in the record that Michael made out the check.
[5] See also N.J.S.A. 2A:34-23.1(l). The judge might have properly referred to Charlene's need for shelter, see Gemignani v. Gemignani, 146 N.J. Super. 278, 282-283, 369 A.2d 942 (App.Div. 1977), but that reason was not expressed.
[6] At oral argument before us Michael indicated he was still not employed. Counsel represented that Charlene was employed.
[7] In her brief, Counsel indicated Charlene's total fees were $72,625.35.
[8] R. 4:42-9(d) also provides that an allowance of fees shall be included in the judgment or order stating the determination.
[9] See also N.J.S.A. 2A:34-23a, effective Dec. 29, 1989, L. 1989, c. 212, which provides that

[i]f a party in any action to enforce and collect child support ordered by a court pursuant to the provisions of N.J.S. 2A:34-23 has incurred counsel fees, the court shall require the defaulting party to pay those counsel fees unless the court finds that the default was substantially justified or that other circumstances make an award of counsel fees unjust. The court shall determine the appropriate award for counsel fees and shall consider the financial circumstances of the parties and whether each acted in good faith. [Emphasis added.]
[10] We do not foreclose unequal equitable distribution if statutory guidelines are applied.