248 N.J. Super. 10 (1991)
589 A.2d 1358
ALLEN GOLDMAN, PLAINTIFF,
v.
SHARON GOLDMAN, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Essex County.
Decided January 31, 1991.
*11 Barry I. Croland for plaintiff (Stern, Steiger, Croland, Tanenbaum & Schielke, attorneys).
Paul A. Rowe for defendant (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys).
GLICKMAN, J.S.C.
In 1971, the Legislature authorized the courts, in a divorce proceeding, "to effectuate an equitable distribution of the property ... acquired ... during the marriage." N.J.S.A. 2A:34-23.
This case involves further review of the continuing evolution of the issue of when an asset should be valued for purposes of equitable distribution. A separate but related issue is whether a litigant should be charged for investing marital funds, post complaint, in good faith, in a business (also a marital asset), that is determined to have no value at the time of trial.
When referring to the problems involved in awarding equitable distribution, the Supreme Court observed:

*12 The judicial task may upon occasion be a difficult one but it will hardly be novel. Seeking just and equitable results is and has always been inherent in the judicial function; it has been a chief concern of the courts for many centuries. [Painter v. Painter, 65 N.J. 196, 212, 320 A.2d 484 (1974)]
The two issues being addressed in this opinion have been alluded to but have never been directly decided in any reported decision in this State. As this court considered those issues, it applied the oft-stated principle that:
[T]he division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership. Only if it is clearly understood that far more than economic factors are involved, will the resulting distribution be equitable within the true intent and meaning of the statute. [Rothman v. Rothman, 65 N.J. 219, 229, 320 A.2d 496 (1974)]

Facts.
For the purpose of deciding the issues presently before the court, the relevant facts are not in dispute. The parties were married in 1966 and they separated in 1987. They have two children who are 23 and 18. The husband filed a complaint for divorce on January 13, 1988.
Plaintiff purchased a car dealership with another person in 1985. He owned two-thirds of the business from its inception until the summer of 1990 when, as the result of the settlement of litigation with his partner, he became the sole owner. He has always been actively involved in the management of the business.
In 1985, he loaned $200,000 of marital funds to the business. The balance of the capital used for acquisition and start-up purposes came from bank loans for which plaintiff became personally liable.
In February 1989, plaintiff loaned $100,000 of marital funds to the business and the additional sum of $250,000 was advanced in November 1989. The business paid interest on those amounts, as it had done on the plaintiff's initial loan of $200,000, and the interest payments were routinely deposited by *13 plaintiff (as were his salary checks) into various money market and liquid accounts that were used to support the family.
Pendente lite motions were argued on July 29, 1988. The order from that date was signed on November 3, 1988. Paragraph five provides:
Both plaintiff and defendant are hereby restrained and enjoined from alienating or encumbering in any manner any of the assets of the parties or either of them, except that plaintiff shall not be restrained and enjoined hereunder from conducting his business known as Coast Imported Cars in the ordinary course....
Plaintiff's loans, totalling $350,000, were made after the entry of that order. In addition, some time in 1990, plaintiff used approximately $50,000 of marital funds to pay counsel fees in connection with the litigation with his partner. For present purposes, the loans and the payment of counsel fees are being treated as having been made in good faith and for valid business purposes.
There is no dispute that defendant was not active in the business and was not consulted by plaintiff, before or after the complaint was filed, about business decisions being made.
Defendant has stipulated that the action of plaintiff in utilizing $400,000 of marital funds for business purposes was not taken in bad faith. She has been unwilling to stipulate that plaintiff acted in good faith.
It has also been stipulated that the business had a value of $294,000 as of the date of the complaint and that it has no value as of the date of trial. As a result of an agreement reached between plaintiff and the bank shortly before the trial, he no longer has an ownership interest in the business. Thus, for obvious reasons, a determination of the valuation date becomes very important.
These two issues are being decided at the beginning of the trial, based upon stipulations and undisputed facts, in an effort to expedite the determination of other issues. At this stage of *14 the proceedings, it is unclear whether alimony will be requested or awarded.[1]

The Car Dealership Will Be Valued As Of The Trial Date.
During the early years of the evolution of the concept of equitable distribution, it was held that the date for valuing assets should be the same as the termination date for determining eligible assets. Smith v. Smith, 72 N.J. 350, 362, 371 A.2d 1 (1977); Borodinsky v. Borodinsky, 162 N.J. Super. 437, 447, 393 A.2d 583 (App.Div. 1978).
In Scherzer v. Scherzer, 136 N.J. Super. 397, 346 A.2d 434 (App.Div. 1975), certif. den. 69 N.J. 391, 354 A.2d 319 (1976), assets became worthless after the complaint was filed and plaintiff sought to fix their value as of the date of the complaint. The Appellate Division agreed with the trial court that the worthless assets were not subject to equitable distribution.
The Legislature mandates that the distribution be an equitable one. In determining what is equitable the trial judge must consider all the particular circumstances of the individuals before it. A proper factor in that determination is any significant change in the valuation of marketable assets that occurs prior to final judgment. We observe no exceptional circumstances in this case which might justify the making of an award in plaintiff's favor as to assets which have become valueless. Nor do we detect anything in the record which suggests that the depletion in value was the result of deliberate action on the part of defendant. [136 N.J. Super. at 400, 354 A.2d 319]
The Supreme Court, in Smith, supra, discussed situations where assets subject to equitable distribution have changed in nature and value between the eligibility date and the date of trial.
If the changes are minor, they can either be ignored or any unduly adverse effects that a judgment of equitable distribution might have on the present circumstances of either party may be compensated for by adjusting the alimony *15 provisions: that is, a husband whose assets have diminished since the date of the agreement may still be required to turn over to his wife her equitable share of the property he then held, but since his present circumstances may then be somewhat straitened compared to hers, this factor may be taken into consideration in relation to the award of alimony. Conversely, a husband whose assets have increased since the date of the separation agreement will not be required to divide the increase with his wife, but his present favorable situation will be a factor that may be considered in setting alimony. [Smith v. Smith, supra, 72 N.J. at 362, 371 A.2d 1]
In the companion case of Carlsen v. Carlsen, 72 N.J. 363, 371 A.2d 8 (1977), (both opinions were written by Justice Mountain and released on the same date), the Court stated:
The only assets that can be found eligible for equitable distribution in any case are those acquired by the spouses during the span of the marriage. Should it be determined that all such assets have been expended, there would then be nothing to distribute. [Id. at 371, 371 A.2d 8]
It is now well established that:
[t]here is no absolutely ironclad rule for determining date of evaluation of assets, but use of consistent date is preferable, such as the filing of the complaint, * * * or perhaps the time of the hearing, depending on the nature of the asset and any compelling equitable considerations. [Bednar v. Bednar, 193 N.J. Super. 330, 332, 474 A.2d 17 (App.Div. 1984)]
See also Wadlow v. Wadlow, 200 N.J. Super. 372, 384, 491 A.2d 757 (App.Div. 1985).
The trial court opinion in Scavone v. Scavone, 230 N.J. Super. 482, 553 A.2d 885 (Ch.Div. 1988), aff'd 243 N.J. Super. 134, 578 A.2d 1230 (App.Div. 1990), discusses the differences between active and passive assets and suggests guidelines with respect to whether an asset should be valued as of the date of the complaint or as of the date of distribution. The Appellate Division affirmed the determination that a seat on the New York Stock Exchange was a passive asset to be valued as of the date of distribution, at which time it was valued at $700,000 as compared to a value of $400,000 when the complaint was filed. "Since the increment in value was caused solely by market forces and not by defendant's efforts or diligence, it was not an abuse of discretion to apply the trial-date value." Scavone, supra, 243 N.J. Super. at 138, 578 A.2d 1230.
*16 During his analysis of active and passive assets and their respective valuation dates, the trial judge in Scavone stated:
By its very nature, an active asset's increase or decrease in value is a direct result of the attention, time, energy and devotion of the sole owner. Therefore, this court acknowledges its predecessors in stating that, if one spouse labors or makes waste of an asset, it is that spouse who ought to reap any benefit or suffer any loss which occurs as a direct consequence of effort and time exerted. [230 N.J. Super. at 492, 553 A.2d at 885].
If this court were to apply that principle to the facts of this case and to require this plaintiff to "suffer any loss which occurs as a direct consequence of [his] effort and time exerted," it would not be carrying out the legislative mandate to distribute marital assets equitably.
As previously noted, the Supreme Court in Smith, supra, by way of dictum, stated that where assets have diminished between the date of valuation and the date of trial, the change could be reflected in the award of alimony. 72 N.J. at 362, 371 A.2d 1. Justice Mountain wrote for the Court:
We can conceive of situations in which the change in one party's financial position may be so great that measures such as these would not be sufficient to do mutual justice; in such a case, a party must be permitted to apply to the court for appropriate equitable consideration of the special circumstances involved. The distribution, though made belatedly, must still be equitable. [Ibid.]
This case presents special circumstances. Based upon the facts before the court, it would be unfair to charge plaintiff with an asset having a value of $294,000 at the time of the complaint when that asset has no value at the time of trial. Accordingly, the car dealership will be valued as of the trial date.
Defendant has argued that if plaintiff's business, an "active" asset, had increased in value between the date of the complaint and the date of trial, she would not have shared in the additional value for reasons discussed in Bednar, supra, and Scavone, supra. Therefore, she cites the unfairness of being required to share in the decrease in value.
No useful purpose can be achieved by discussing hypothetical scenarios. However, if defendant had sought to share in an *17 increase in value of the business, a strong argument could have been made that the business survived and increased in value as a result of the infusion of approximately $400,000 of marital assets. That use of marital assets to enhance the value of an active asset would have distinguished this case from the cases relied upon by defendant.

The Use Of Marital Assets In The Business Will Not Be Charged Against Plaintiff.
This issue arises as a result of the use by plaintiff of approximately $400,000 of marital funds, after the complaint was filed, in an effort to keep his business alive. The funds were also invested in the business or used for business purposes after the entry of the order which authorized plaintiff to conduct his business "in the ordinary course" despite the restraint against the alienation of the assets of the parties "in any manner."
Defendant has stipulated that plaintiff's use of these marital funds was not made in bad faith. This issue is being decided on the assumption that plaintiff's actions with respect to the use of $400,000 for business purposes were taken in good faith. That assumption is being made despite the fact that the marital funds were used by plaintiff after the entry of the restraining order. If, as the result of subsequent proceedings, defendant can establish a violation of that order by plaintiff, she can seek the imposition of sanctions or other relief against plaintiff.
As noted above, his efforts to save the business were not successful and defendant seeks to charge that amount against plaintiff's share of equitable distribution.
In Monte v. Monte, 212 N.J. Super. 557, 515 A.2d 1233 (App.Div. 1986), the Appellate Division held that marital liabilities as well as marital assets must be considered when awarding equitable distribution. "However, if the debt resulted because the husband intentionally dissipated marital assets `such intentional dissipation is no more than a fraud on marital *18 rights,' and the debt will not be charged to the wife." Id. at 567-568, 515 A.2d 1233.
Although the two issues presently before the court do not involve the allocation of marital debt, the rationale of Monte, supra, would apply by analogy. However, there is no allegation that this plaintiff intentionally dissipated marital assets.
Nor is there an allegation that plaintiff's use of $400,000 constituted an effort by him to discharge some of his pendente lite obligations. If plaintiff had depleted marital assets to discharge his obligations, he would have been charged with the amount of the depletion. Weiss v. Weiss, 226 N.J. Super. 281, 291, 543 A.2d 1062 (App.Div. 1988), certif. den. 114 N.J. 287, 554 A.2d 844 (1988).
Plaintiff made a good faith effort to preserve a marital asset for himself and his wife by investing marital funds in his business. A transfer of funds from one marital asset to another by plaintiff, in good faith, does not constitute a dissipation of assets that should result in an imposition of the loss solely upon him after the business failed. The facts just recited distinguish this case from Schell v. Schell, 212 N.J. Super. 649, 515 A.2d 1283 (Ch.Div. 1986), relied upon by defendant.
Once again defendant argues, hypothetically, that had plaintiff applied to the court for authorization to invest $400,000 in the business, she would have requested an advance award of equitable distribution to her in the same amount. She points out that when she requested and received $90,000 from the court in order to complete the purchase of property that she had agreed to purchase before the filing of the complaint, plaintiff received the same amount. It will serve no useful purpose to discuss whether defendant would have received a similar amount if plaintiff had applied to the court. However, there is a difference between the transfer of funds from one marital asset to another and the acquisition of an asset post-complaint that is not subject to equitable distribution.
*19 For the reasons stated, the good faith use by plaintiff of approximately $400,000 for business purposes will not be charged against his share of equitable distribution.
NOTES
[1] Although this decision on the two issues was announced at the beginning of the trial, the written opinion is being filed after all of the proofs have been submitted, except for the testimony of the court-appointed accountant. None of the proofs alters the factual basis upon which this decision is predicated.