**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2353-17T1

CHRISTOPHER P. BROSIUS,

    Plaintiff-Appellant,

v.

MARY BROSIUS,

    Defendant-Respondent.

_____

           Argued October 30, 2018 – Decided February 5, 2019

           Before Judges Rothstadt and Gilson.

           On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0117-16.

           Kelscey A. Boyle argued the cause for appellant (Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh and Kelscey A. Boyle, on the briefs).

           Daniel L. Martin argued the cause for respondent.

PER CURIAM

    In this post-judgment dissolution action, plaintiff Christopher P. Brosius

appeals from the Family Part's order that required him to pay to defendant Mary

Brosius one-half of the appreciation in the value of his retirement account from the date of the parties' property settlement agreement (PSA) to the date of distribution. On appeal, plaintiff contends that the motion judge "rewr[ote]" the parties' PSA by allowing defendant to share in the appreciated value. Moreover, he contends that the account was an "active asset, the growth upon which [was] not subject to equitable distribution." We disagree and affirm substantially for the reasons expressed by Judge John P. McDonald in his comprehensive written decision.

The salient facts are undisputed. The parties were married on January 8, 1993. On December 23, 2015, the parties signed the PSA, which was incorporated into their final judgment of divorce (JOD) that was entered on February 29, 2016.

Paragraph 9 of the PSA addressed the equitable distribution of plaintiff's 401(k) account. It stated the following:

> Husband has a 401(k) through his former employer, Verizon. The parties agree that the approximate value of the 401(k) is $625,000. The parties agree that Wife shall retain 50% of this 401(k). The parties shall cooperate in completing a Qualified Domestic Relations Order (QDRO) to split the account as set forth above. The parties agree that they shall share equally in all costs to complete the QDRO.

Paragraph 10 contained a similar provision regarding plaintiff's Verizon pension, allowing defendant to "retain 50% of this pension." Paragraph 29 stated that any payments required by the PSA "shall be disbursed to the parties immediately upon the execution of this Agreement unless provided for otherwise." Paragraph 34 contained a proviso for mutual release by the parties and in paragraph 39, the parties acknowledged that the agreement contained their entire understanding and constituted their complete agreement.

In October 2017, defendant filed a motion seeking the enforcement of the account's distribution. Defendant stated in her supporting certification that shortly after the JOD was entered, plaintiff transferred the funds from the Verizon 401(k) to an individual retirement account (IRA) that plaintiff opened in his name. Defendant stated that plaintiff subsequently refused to provide her a fifty percent share of the 401(k) money in contravention of paragraph 29 of the PSA. Defendant sought a total of $382,375 as payment for the $312,500, representing one-half of the 401(k)'s value as of the date of the PSA, as well as one-half of the appreciation that accrued, or $69,875, as of October 9, 2017, the date she filed her motion. In calculating that amount, defendant relied upon general descriptions of market conditions because she did not have any account

A-2353-17T1

documents despite asking defendant for account statements and related information.

In his certification, plaintiff admitted that he withdrew the funds from the Verizon 401(k) in January 2016, but stated that he placed them into an IRA due to a steep market decline. Plaintiff alleged that the delay in transferring defendant's share was defendant's fault because she was responsible for choosing the company to prepare the QDRO and due to numerous errors, it had to be redrafted several times. He stated that the QDRO was not completed until around May 2017 due to defendant's "bad faith." However, plaintiff also stated that because the funds were in an IRA, no QDRO was needed to transfer defendant's share.

After considering the parties written submissions and oral arguments, on December 1, 2017, Judge McDonald ordered that plaintiff pay by December 5, 2017, one-half of the account's value as stated in the PSA, without prejudice to "defend[a]nt's ability to seek additional funds for the loss of the growth of the $312,500." In his accompanying written decision, the judge explained that "given the clear language of the PSA," he found defendant's argument that the "robust market would have provided an increase in her share of the 401(k)" was insufficient to establish her interest in the appreciated value. The judge

4

concluded that it was "speculative given the natural volatility of the stock market and investments she may or may not have made during that time."

Defendant filed a motion for reconsideration, asserting again that she was entitled to an award of the appreciation that had accrued in the value of the 401(k). Unlike her earlier certification, defendant now provided a breakdown of what would have been the value of the 401(k) at the end of the two years since the signing of the PSA. Using account documents plaintiff included in his submissions on the earlier motion, defendant demonstrated the increase in value of the particular investment funds that comprised plaintiff's 401(k) at the time of the PSA and provided each fund's undisputed current value.

The parties appeared for oral argument on January 19, 2018, and on that date, Judge McDonald granted defendant's motion, ordering plaintiff to pay from his IRA an additional $69,113.78. In his accompanying written decision, the judge referred to defendant's most recent certification, where she explained in detail the shares that made up the 401(k) in December 2015, and delineated the values of each of those funds in both December 2015 and in December 2017, that demonstrated their increased values. The judge stated that defendant was entitled to half of the value of the 401(k) approximately two years prior and would have had the right to have the money "grow in the interim," and that her

ability to do so "was prohibited by the plaintiff's non-compliance with the PSA." The trial court reasoned that, although paragraph 9 of the PSA is silent on the issue of which party should benefit from gains on an entirely marital asset, "[a] fair reading of the paragraph reveals that neither side is to benefit over the other. . . . Neither party has a greater or lesser right to share in any gains or losses." This appeal followed.

On appeal, plaintiff specifically contends that defendant was "entitled to one-half of $625,000; nothing more and nothing less." He argues in the alternative that the appreciation in value is exempt from distribution because he preserved the funds in the 401(k) by moving them to his IRA and selecting the funds "to invest the monies in and actively monitored his choices." We disagree.

We begin by acknowledging that "we accord great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). Because of the Family Part's expertise in family matters, our review of a Family Part judge's fact-findings is limited. See N.J. Div. of Youth & Family Servs. v. T.S., 429 N.J. Super. 202, 216 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)); N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). We generally defer to factual findings made by a trial court when such findings are

supported by adequate, substantial, and credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015). Accordingly, we will only reverse a trial court's factual findings when they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). In contrast, "trial judge[s'] legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We review a decision about equitably distributing marital assets for an abuse of discretion. La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000). We will affirm the Family Part's decision as long as the court "could reasonably have reached the result from the evidence presented, and the award is not distorted by legal or factual mistake." Ibid. (citing Perkins v. Perkins, 159 N.J. Super. 243, 247-48 (App. Div. 1978)).

Turning to plaintiff's contentions, we conclude that Judge McDonald properly exercised his discretion in awarding defendant half of the account's appreciation in value. While there was no dispute that the PSA did not expressly

address appreciation or loss in the account's value, it was equally undisputed that the expressed intent was that defendant would share in one-half of the account's value. The fact that paragraph 9 of the PSA stated the account's then-present value does not require a different result. The PSA stated that defendant would "retain 50% of the account," not fifty percent of the stated value at that time. Judge McDonald appropriately "suppl[ied] the missing term" and determined from the PSA's language how the parties intended for that distribution to be addressed. Quinn v. Quinn, 225 N.J. 34, 46 (2016).

Judge McDonald therefore properly "discern[ed] and implement[ed] the intentions of the parties [and did not] rewrite or revise" the PSA. Id. at 45 (citations omitted). Rather, because the PSA did not address the unanticipated delay on distribution and the resulting change in value, the judge provided "a missing term that [was] essential to implementation" of the PSA. Id. at 46.

Plaintiff's remaining argument that the appreciation should not have been awarded because the account was an "active asset" is without merit. The calculations that the judge relied upon were based solely on the market fluctuations of the funds that would have occurred in the 401(k)'s value since the parties signed the PSA. There was no evidence that the appreciation was based upon any active action or management on plaintiff's part that established

8

the asset was "active" versus "passive," thereby warranting its exclusion from equitable distribution. Scavone v. Scavone, 230 N.J. Super. 482, 486-87 (Ch. Div. 1988), aff'd, Scavone v. Scavone (Scavone II), 243 N.J. Super. 134 (App. Div. 1990).

"Where there has been fluctuation in the value of a marital asset between the date the divorce complaint was filed and the date of distribution, the driving force behind that fluctuation must be determined so that proper distribution of the asset may be accomplished." Addesa v. Addesa, 392 N.J. Super. 58, 76-77 (App. Div. 2007). Active assets "involve contributions and efforts toward their growth and development which directly increase their value." Scavone, 230 N.J. Super. at 487. Passive assets acquired jointly during the marriage are subject to equitable distribution, id. at 490, and are valued at the date of trial or distribution. Platt v. Platt, 384 N.J. Super. 418, 427 (App. Div. 2006). If the increase in value of an asset "is simply due to market factors or inflation, each party should share equitably in the increment . . . ." Bednar v. Bednar, 193 N.J. Super. 330, 333 (App. Div. 1984).

Therefore, "[i]nterim accretions pending actual distribution due to the diligence and industry of a party in possession of an asset, independent of [the] market forces," should accrue to that person alone, but where the enhanced value

is attributable to market factors or inflation, "each party should share equitably in the increment[.]"  <u>Scavone II</u>, 243 N.J. Super. at 137 (quoting <u>Bednar</u>, 193 N.J. Super. at 333).  Judge McDonald properly followed this principle and made the award of one-half the appreciated value to defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2353-17T1