**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0523-19T1

SARINA M. FERNICOLA,

    Plaintiff-Appellant,

v.

ROBERT C. FERNICOLA,

    Defendant-Respondent.

_____

Argued October 19, 2020 – Decided January 11, 2021

Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0587-17.

Kevin E. Young argued the cause for appellant (Herlihy, Young & Niemiec, attorneys; Kevin E. Young, on the brief).

Abigale M. Stolfe argued the cause for respondent (Stolfe & Zeigler attorneys; Abigale M. Stolfe and Heather N. Capp, on the brief).

PER CURIAM

Plaintiff Sarina M. Fernicola appeals the August 23, 2019 Family Part order granting defendant Robert C. Fernicola's motion for reconsideration and finding the Nationwide Financial IRA (the Nationwide account) consisted solely of premarital funds and was not subject to equitable distribution under the parties' Marital Settlement Agreement (MSA). We affirm the August 23, 2019 order.

After ten years of marriage, plaintiff filed for divorce on November 14, 2016, citing irreconcilable differences. Defendant filed a counterclaim citing the same grounds. A lengthy "collaboration process" was unsuccessful but the parties reached a settlement in mediation. The MSA was incorporated into their May 25, 2017 Final Judgment of Divorce.

The MSA is a comprehensive document. We mention only the sections that are necessary for our opinion.

Section 1.17 of the MSA provides that the parties have "conducted limited discovery but wish to proceed with the information exchanged during mediation." They "waive[d] the right to complete formal discovery proceedings." Section 1.15 provides that the MSA is the entire agreement between the parties.

Article V of the MSA addresses the division of their property. Section 5.1 lists certain assets defendant retains "free and clear of any interest" by plaintiff. Among other things, this includes two accounts identified by name and number, but does not include the Nationwide account. Section 5.2 lists the assets plaintiff retains "free and clear of any interest" of defendant. This includes plaintiff's teacher's pension. In section 5.3, the parties agree to execute the documents that are needed to transfer title in these assets. Section 5.4 lists an account the parties agree to share equally "along with any passive increase or decrease in value accumulated as of" the date the asset is distributed.

The Nationwide account is addressed in section 5.5. Under that section,

> [t]he parties shall share the marital portion (the value of the asset as of the date of marriage, July 22, 2006 and agreed upon date of dissolution, June 30, 2015) of the following assets:
>
> A. [account A] . . .
>
> B. Nationwide IRA . . .
>
> C. [account C] . . .
>
> D. [account D] . . .
>
> The parties will exchange the necessary documentation to each other within [thirty] days of this agreement so that each party's portion of these assets can be properly titled in their own name. Should a Qualified Domestic Relations Order [QDRO] be required for the transfer of

3

A-0523-19T1

> any asset described above, the parties will share the cost of preparing the QDRO through Troyan and Associates. Any tax or liability associated with the transfer of these funds shall be paid by the party receiving the distribution that incurred the tax.

The parties do not agree what portion of the Nationwide account, if any, is subject to equitable distribution.

On August 22, 2018, defendant filed a motion to enforce litigant's rights requesting that plaintiff abide by paragraph 5.5 of the MSA. Defendant certified that the Nationwide account was "entirely pre-marital," making it exempt from distribution. He certified these funds were "never commingled during the marriage." He requested counsel fees for making the motion.

Plaintiff also requested the enforcement of litigant's rights to require defendant to complete the QDRO in accord with the MSA and requested an award of attorney's fees.

The Family Part judge granted plaintiff's cross-motion. The December 14, 2018 order provided that the parties were to cooperate in facilitating the completion of the QDRO's in accordance with their MSA, including the Nationwide IRA. The court denied the parties' requests for attorney's fees.

Defendant requested reconsideration, arguing the term "marital portion" used in the MSA was not defined and that the full value of the account is not the

"marital portion." Plaintiff filed opposition and a cross-motion to enforce litigant's rights. She argued that defendant's motion did not satisfy the standard for reconsideration.

On February 22, 2019, the trial court ordered discovery and a plenary hearing. The plenary hearing was to determine the source of the funds for the Nationwide account.

At the hearing, defendant testified that he is an attorney. Prior to his marriage, he worked as an associate in the firm of Schibell & Mennie. The firm funded a 401K with a cash deferred contribution. When he left the firm to start his own, the 401K account remained dormant. In his new firm, he established an IRA with Smith Barney as a retirement account.

The parties consulted with a financial planner in 2010 because defendant wanted to invest money in "income-generating vehicles." New accounts were created and monies from existing accounts were rolled into the new ones.

Defendant testified that through the divorce process, "[i]t was always understood . . . what was premarital was premarital. What was during the marriage, was during the marriage." This meant that "[w]hat we brought into the marriage prior to the marriage was not to be part of the marital component

A-0523-19T1

and what would be divided up between is with regard to the assets during the marriage."

Defendant claimed that when the MSA was prepared, they did not have all the documentation for the accounts "to determine what the amount of the premarital component was." The values listed in section 5.5 were approximate values. He thought the 401K from the Schibell & Mennie firm was rolled over into account C, but he was mistaken. Because they did not know what portion of the accounts in section 5.5 were premarital or marital, defendant testified that they were to submit all of their documentation to Troyan to prepare the QDRO. After the divorce, he assembled documents for Troyan as requested, but the 401K from Schibell & Mennie and an IRA from Smith Barney were pre-marital. There was no premarital component to account C. Defendant advised plaintiff's attorney, but she would not agree to any exemption of the assets.

Plaintiff testified that some of the financial statements about their investments were being sent directly to defendant's law firm, giving him knowledge of those accounts. This included the Nationwide account. Plaintiff claimed she had premarital funds in account A.

Plaintiff testified that they met with the financial planner in 2010. Each had to bring documentation of their accounts. She did not have access to

defendant's accounts.  Plaintiff testified that because the Nationwide account was "opened essentially in the duration of the marriage, [she assumed] that it was part of the marital property."  She understood the Nationwide account was to be divided evenly between them.  In mediation, they were asked to discuss the premarital portions of any retirement accounts.  She thought the premarital portion was already taken out of all the accounts in section 5.5 lettered A, B, C and D and that those values were then to be added and divided evenly.

On August 23, 2019, the court found that the Nationwide account "was funded with and consists of solely premarital funds" and that it was "exempt from distribution in accordance with the plain language of [the MSA]."  In the court's oral decision, the court found that "[t]he parties were in agreement coming out of the collaborative process, that [what] was premarital would be kept premarital, meaning that, the property of whatever party was premarital would not be subject to equitable . . . distribution."  The court found it "was unclear at the time that the parties negotiated [the MSA]" what portion of the Nationwide account was marital and what was premarital.

The court found the parties were not certain where certain premarital accounts had gone to in connection with their retirement planning.  At issue was defendant's 401K from the Schibell & Mennie firm and other amounts rolled in

7

from two other accounts. The parties "assumed" these monies went into account C, but they did not. The court found credible defendant's testimony that "no one was really focused on this." The court found that if the parties had known the monies in the Nationwide account were premarital, it would have been included in section 5.1 of the MSA. The court was not rewriting the agreement by awarding plaintiff a portion of the premarital funds. Rather, the "[N]ationwide account is entirely premarital and not subject [to] equitable distribution."

On appeal, plaintiff argues that

> THE MARITAL SETTLEMENT AGREEMENT WAS INTENDED TO AVOID POST-JOD HAGGLING OVER THE 'SOURCE' OF THE MARITAL ASSETS THE PARTIES AGREED TO DISTRIBUTE; JUDGE PUGLISI WAS CORRECT IN HER ORIGINAL DECISION AND THIS COURT SHOULD VACATE THE AUGUST 23, 2019 RECONSIDERATION ORDER.

Plaintiff argues the trial court had no basis to reform the parties MSA by recategorizing an asset absent a finding of "unconscionability, fraud or overreaching," citing Miller v. Miller, 160 N.J. 408, 419 (1999). She concludes the MSA should be enforced as any other contract, pursuant to its intent. The parties assumed the source of the Nationwide account was commingled assets. She argues the judge should not be able to revisit one of the assets to place it under section 5.1 instead of 5.5.

A-0523-19T1

We defer to the factual findings of the Family Part judge when there is substantial credible evidence in the record to support them. N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). In doing so, we are mindful of the "special expertise of judges hearing matters in the Family Part," according due deference to factual findings. Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010); see also Cesare v. Cesare, 154 N.J. 394, 413 (1998). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Both parties agreed that premarital assets were not to be subject to equitable distribution under the MSA. This was consistent with the general notion that for an asset to be subject to equitable distribution, it must be "property . . . legally and beneficially acquired by [the parties] or either of them during the marriage." Orgler v. Orgler, 237 N.J. Super. 342, 350 (App. Div. 1989) (alterations in original) (quoting N.J.S.A. 2A:34-23). It is generally understood that property owned by a party "at the time of marriage will remain the separate property of such spouse . . . ." Painter v. Painter, 65 N.J. 196, 214 (1974); see Scavone v. Scavone, 230 N.J. Super. 482, 488-89 (Ch. Div. 1988).

A-0523-19T1

The MSA itself was careful to distinguish between these concepts. Section 5.1 addressed defendant's property. Section 5.2 addressed plaintiff's property. Section 5.4 listed an account that they both agreed was subject to equitable distribution. Section 5.5 were the accounts where a portion was supposed to be marital and subject to division.

Plaintiff believed that section 5.5 did not include premarital assets and that the amounts listed in 5.5 were net of these amounts. However, the court found defendant was credible that at the time of the divorce neither party focused on the source of the funds for the Nationwide account. That is consistent with the language of the MSA to the extent it said the parties would share the marital portion of the assets in section 5.5. Section 5.5 also contemplated that the parties would determine after the MSA was signed what part of the accounts were premarital. They were to "exchange the necessary documents to each other within [thirty] days . . . so that each party's portion of these accounts can be properly titled in their own name."

Plaintiff did not contest that the 401K from Schibell & Mennie and the funds from the other two accounts that also funded the Nationwide account were premarital. Rather, she testified that because the monies had been rolled into the Nationwide account in 2010, they became marital at that time. That was not

10

consistent with her testimony that certain funds of hers were premarital or that premarital funds were not subject to equitable distribution.

The plenary hearing resolved that none of the Nationwide account included marital funds, having been derived entirely from premarital funds. This was amply supported by the evidence presented by defendant. There was no abuse of discretion in determining that these funds were not subject to equitable distribution.

"A settlement agreement is governed by basic contract principles." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)). In interpreting and enforcing a settlement agreement, a court is to "discern and implement the intentions of the parties." Ibid. (citation omitted). An agreement will not be enforced if it was the product of "unconscionability, fraud or overreaching in the negotiations of the settlement[.]" Id. at 47 (alteration in original) (quoting Miller, 160 N.J. at 419). We are not to make a better agreement for the parties. See Quinn, 225 N.J. at 45.

The court's order was consistent with the parties' intent as expressed in the MSA. The MSA left open that the accounts in section 5.5 could be a mixture of funds. In this case, the Nationwide account was entirely premarital. The Family

Part judge simply applied the MSA as it was written once it was clear these funds were premarital.

Defendant requests an award of attorney's fees for the appeal under <u>Rule</u> 2:11-4 but did not file the required motion. We will not address what is not properly before us. <u>Bandler v. Melillo</u>, 443 N.J. Super. 203, 212 n.5 (App. Div. 2015).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0523-19T1