**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1391-23

KAREN HENDRIE,

    Plaintiff-Respondent,

v.

FRANCIS HENDRIE,

    Defendant-Appellant.

_____

Argued February 26, 2025 – Decided April 29, 2025

Before Judges Mayer, DeAlmeida and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1259-22.

Gregg S. Sodini argued the cause for appellant (Cutolo Barros, LLC, attorneys; Gregg S. Sodini, on the briefs).

Brian Schwartz argued the cause for respondent (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Karen Hendrie, on the pro se brief).

PER CURIAM

Defendant Francis Hendrie appeals from the October 2, 2023 Family Part Dual Final Judgment of Divorce (DFJOD) that exempted from equitable distribution plaintiff Karen Hendrie's interest in limited liability companies' (LLCs) capital accounts, allocated certain credit card debt to defendant, assessed each party an equal share of a tax liability incurred in 2020, and awarded plaintiff $10,000 in attorneys' fees; and the December 13, 2023 order that denied his motion for reconsideration of these provisions and awarded plaintiff an additional $2,000 in attorneys' fees. We affirm.

I.

The parties were married in 2003 and had four children. Although plaintiff worked at the time of the marriage, she left outside employment to be the children's primary caregiver from 2004 to 2015. Defendant was the primary income earner during that time.

In 2007, defendant founded a telecommunications business which, by 2012, was "drowning in debt." Because of the family's financial difficulties, plaintiff's parents paid the parties' mortgage in 2015 while plaintiff returned to school, became a licensed realtor, and returned to the workforce. Beginning in 2016, the parties withdrew funds from their children's college savings accounts

to fund their household expenses and legal expenses related to defendant's failing business.

In 2020, defendant filed for bankruptcy, which discharged most of his business-related debts. Defendant's income was negative for the year, so plaintiff did not pay the federal taxes due on her 1099 compensation because the family needed her full income. The resulting federal tax debt was $34,597.

Central to the parties' dispute and this appeal are two LLCs: BKLM Associates, LLC (BKLM) and BKLM Associates II, LLC (BKLM II) (collectively, the BKLM Entities), which plaintiff's father established. Plaintiff's parents purchased five residential rental properties prior to the parties' marriage. BKLM, formed effective January 1, 2000, owned three of the properties and BKLM II, formed effective January 1, 2014, owned the other two.

Plaintiff's parents gifted shares of the BKLM Entities to each of their four children for "estate planning purposes" and plaintiff did not pay for her interest in the entities. Her parents held voting interests in the BKLM Entities and were designated as the managers, with sole authority for their management. Plaintiff served as the real estate agent when a property became vacant, but the parties were otherwise uninvolved in the investment.

A-1391-23

On the parties' joint federal tax returns, plaintiff reported income from the BKLM Entities on Schedule K-1 ("Partner's Share of Income, Deductions, Credits, etc.") and Form 8825 ("Rental Real Estate Income and Expenses of a Partnership or an S Corporation"). Plaintiff's Schedule K-1 reported the net rental real estate income from the rental properties proportionate to her ownership interest in the BKLM Entities. Plaintiff did not receive a cash distribution from the BKLM Entities, rather any income was added to her capital account as reported on her Schedule K-1s.

As a result, plaintiff's partnership income was reported on the parties' joint federal income tax return on Schedule E ("Supplemental Income and Loss") as partnership income on Schedule 1 ("Additional Income and Adjustments to Income") to their Form 1040 ("U.S. Individual Income Tax Return") and, in turn, on their Form 1040 as other income. Thus, the increase in plaintiff's capital account was taxable income. During the marriage, the joint income tax liability attributable to plaintiff's interest in the BKLM Entities income was less than $7,000, which plaintiff's father paid to the parties.

The parties separated in July 2021 and plaintiff filed a complaint for divorce in February 2022. Defendant answered the complaint and counterclaimed for divorce.

Judge Marc R. Brown presided over the two-day trial on July 18 and 19, 2023, during which both parties testified. On October 2, 2023, Judge Brown entered a DFJOD accompanied by a thirty-one-page single-spaced letter opinion addressing equitable distribution and attorneys' fees. Relevant to this appeal, the DFJOD exempted the BKLM Entities from equitable distribution, assessed each party an equal share of their 2020 federal tax liability, allocated certain credit card debt to defendant, and awarded plaintiff $10,000 in attorneys' fees.

Defendant moved for reconsideration on these issues. After considering argument, the judge denied the motion and awarded plaintiff an additional $2,000 in attorneys' fees related to the motion.

This appeal follows.

II.

Our scope of review of Family Part orders is narrow. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Generally, we "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters," Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413), and will not overturn the Family Part's findings of fact when they are "supported by adequate, substantial, credible evidence," Cesare, 154 N.J. at 412. We also will not disturb the Family Part's factual findings and legal

conclusions that flow from them unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)). We review a Family Part's legal determinations de novo. Id. at 565.

When a judgment of divorce is entered, the Family Part may "effectuate an equitable distribution of the [marital] property, both real and personal, which was legally and beneficially acquired . . . during the marriage . . . ." N.J.S.A. 2A:34-23(h)(1). "The theory of equitable distribution is that marriage is a partnership whose assets should be fairly and equitably distributed when the partnership breaks up." Brown v. Brown, 348 N.J. Super. 466, 490 (App. Div. 2002).

The trial court undertakes a three-part inquiry when determining whether to equitably distribute property. Rothman v. Rothman, 65 N.J. 219, 232 (1974). The court first decides whether an asset is subject to equitable distribution. Ibid. Real and personal property legally and beneficially acquired constitutes the parties' "marital estate." Chalmers v. Chalmers, 65 N.J. 186, 194 n.5 (1974). Only property acquired during the marriage is subject to equitable distribution. Thieme v. Aucoin-Thieme, 227 N.J. 269, 285 (2016); N.J.S.A. 2A:34-23(h)(1).

Under the second step of the <u>Rothman</u> analysis, the court determines the asset's value. 65 N.J. at 232. And third, the court determines the allocation of both marital assets and debt. <u>Ibid.</u> The equitable distribution of marital property is guided by the following statutory factors:

a. The duration of the marriage or civil union;

b. The age and physical and emotional health of the parties;

c. The income or property brought to the marriage or civil union by each party;

d. The standard of living established during the marriage or civil union;

e. Any written agreement made by the parties before or during the marriage or civil union concerning an arrangement of property distribution;

f. The economic circumstances of each party at the time the division of property becomes effective;

g. The income and earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage or civil union;

A-1391-23

h. The contribution by each party to the education, training or earning power of the other;

i. The contribution of each party to the acquisition, dissipation, preservation, depreciation or appreciation in the amount or value of the marital property, or the property acquired during the civil union as well as the contribution of a party as a homemaker;

j. The tax consequences of the proposed distribution to each party;

k. The present value of the property;

l. The need of a parent who has physical custody of a child to own or occupy the marital residence or residence shared by the partners in a civil union couple and to use or own the household effects;

m. The debts and liabilities of the parties;

n. The need for creation, now or in the future, of a trust fund to secure reasonably foreseeable medical or educational costs for a spouse, partner in a civil union couple or children;

o. The extent to which a party deferred achieving their career goals; and

p. Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23.1.]

III.

Considering defendant's contentions in turn, we first address his claim the judge erred in determining plaintiff's BKLM Entities' capital accounts were not subject to equitable distribution. Defendant argues the capital accounts were funded with the parties' joint income during the marriage as reflected on their joint tax returns, and therefore the value of the capital accounts was subject to equitable distribution. Plaintiff counters the Schedule K-1s were used only as an accounting method. Both parties cite Scavone v. Scavone, 230 N.J. Super. 482 (Ch. Div. 1988), aff'd, 243 N.J. Super. 134 (App. Div. 1990), albeit with their own interpretations of its applicability here.

There is no dispute plaintiff acquired an interest in the BKLM Entities from her parents as a gift. Although a gift to one party is not subject to equitable distribution, N.J.S.A. 2A:34-23(h)(1), if separate property is commingled, it will be treated as marital property subject to equitable distribution unless there is "a clearly manifested and unequivocal intent that [it] belonged to [one spouse] and would ultimately be returned to [him or] her." Wadlow v. Wadlow, 200 N.J. Super. 372, 380 (App. Div. 1985).

In Scavone v. Scavone, the Family Part grouped assets into seven categories to guide courts in implementing the newly-enacted amendment to the

equitable distribution statute. 230 N.J. Super. 482. The court first defined passive assets as "those whose fluctuations are based exclusively on market conditions" and active assets as those that "involve contributions and efforts towards their growth and development which directly increase their value." Id. at 486-87. The following Scavone categories are relevant here.

Category one includes passive immune assets acquired pre-marital, by gift or inheritance, held in one party's name. Id. at 486-87. These "assets . . . and their incremental values are viewed as separate property and are thus not subject to distribution." Id. at 486.

Category four assets are passive joint assets acquired during the marriage and are distributable. Id. at 490. Parties will share the increase in value "[i]f the increase in value is simply due to market factors or inflation . . . ." Ibid. (alteration in original) (quoting Bednar v. Bednar, 193 N.J. Super. 330, 333 (App. Div. 1984)).

Category seven assets are passive assets acquired during the marriage in one name and their incremental value is distributable. Id. at 493.

Defendant contends the BKLM Entities' capital accounts are Scavone category four or seven assets, both of which are subject to equitable distribution with their value determined at the time of distribution. We disagree.

In addressing the BKLM Entities, Judge Brown found

> defendant failed to provide proof by a preponderance of the evidence these assets are subject to equitable distribution. Initially, the evidence presented by plaintiff clearly indicate that plaintiff's parents acquired the properties, which were subsequently transferred to the BKLM [E]ntities for nominal consideration, prior to the parties' marriage. The evidence is equally clear that plaintiff received her interest in those entities by way of gift from her parents. In fact, defendant himself testified that he did not recall that he or plaintiff made any payment during their marriage to acquire plaintiff's interest in either BKLM entity.

On reconsideration, defendant argued the judge failed to consider his claim that plaintiff's BKLM Entities' capital accounts, not her interest in the BKLM Entities themselves, was subject to equitable distribution. Judge Brown rejected this contention because the record was devoid of any evidence plaintiff's share in the BKLM Entities "was anything other than a passive asset." The judge further found the capital accounts were just "a snapshot at a certain point in time . . . not a determination as to value."

We agree plaintiff's share in the BKLM Entities were Scavone category one assets not subject to equitable distribution. There was no evidence in the record demonstrating plaintiff's intent to share the gift with defendant, nor did she commingle the gift with marital funds.

11

We also reject defendant's contention that the income as reflected in the capital accounts was converted to joint property because it was included on the parties' joint tax returns. See In re Est. of Carson, 83 N.J. Super. 287, 292 (Camden Cnty. Ct. 1964) ("The filing of a joint [federal tax] return does not have the effect of conforming the income of one spouse to the income of the other."). The capital accounts were merely accounting mechanisms established to record the gifts to plaintiff, which she was required to report on her tax return. Thus, there is no support for defendant's contention the capital accounts were either Scavone category four or seven assets.

We next address defendant's assertion the trial court erred in attributing the USAA credit card debt to him. The record reflects that as of January 22, 2019, the credit card debt totaled $9,235.22, and as of November 11, 2022, it totaled $9,607.58. Defendant avers that, except for the $372.36 increased balance between January 22, 2019 and November 11, 2022, the remainder of the debt was jointly incurred before January 22, 2019 and therefore should have been divided evenly. Plaintiff argues she did not use the credit card between 2019 and 2022, during which she was responsible for all other household expenses, and therefore the judge did not err in allocating the debt to defendant.

"It shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property while the party was married." N.J.S.A. 2A:34-32.1. Courts are empowered to either "deduct marital debts from the total value of the estate[] or allocate the obligations between the parties." Slutsky v. Slutsky, 451 N.J. Super. 332, 348 (App. Div. 2017). The division of the marital estate should account for the allocation of debts on the same principles as the division of assets. Id. at 348; N.J.S.A. 2A:34-23.1(m) (requiring courts to consider "debts and liabilities of the parties" when determining equitable distribution).

In equitably distributing the marital assets and debt, Judge Brown explained the reasons for his allocation of the credit card debt to defendant. There was no evidence in the record regarding the nature of the credit card debt incurred prior to 2019. The card was in plaintiff's name with defendant as an authorized user. The record showed "a majority of the charges were incurred by defendant for his own purposes, including high end restaurants and even some of his counsel fees, and . . . these charges were made after the filing of the divorce complaint." More so, while defendant used the credit card, plaintiff paid her share of the marital expenses without using the card. Thus, the judge found that "[a]s a result, if compelled to contribute to this debt, plaintiff would have

paid her expenses as well as a portion of defendant's expenses." Given our deferential standard of review, we discern no abuse of discretion in the judge's findings and allocation of this debt.

Turning to the 2020 tax year tax liability, defendant argues the judge should have allocated the entirety of this debt to plaintiff because it was incurred while the parties were separated and it was her "fault." Defendant further contends it is inconsistent to hold he has no right to share the BKLM Entities' income, but make him responsible for half of the tax liabilities resulting from plaintiff's failure to withhold taxes.

Judge Brown considered and rejected defendant's arguments, finding he "fail[ed] to recognize that during the tax year in question, plaintiff was the sole source of family support and that her entire income was needed to meet the needs of the family, including defendant himself." We are unpersuaded the judge's categorization of the BKLM Entities and income as gifts exempt from equitable distribution should have shifted the burden of responsibility for the tax debt.

We next address the award of attorneys' fees to plaintiff. Defendant argues his claim of entitlement to an interest in the capital accounts was not without a basis in fact, law or equity. He further contends plaintiff "drove the trial of this matter" with "her scorched earth litigation tactics." He claims he

14

had to go to trial because plaintiff took the position he was not entitled to any proceeds from the sale of the former marital residence, which the trial court rejected. Finally, defendant argues the attorneys' fees awarded in the motion for reconsideration was an error because the judge misunderstood his argument at trial regarding the capital accounts, and therefore the motion was justified.

On "review, we will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Slutsky, 451 N.J. Super. at 365-66 (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)); see Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010) ("On appeal, a decision regarding counsel fees will not be reversed absent a showing of an abuse of discretion involving a clear error in judgment.").

A Family Part judge has the authority to award counsel fees pursuant to N.J.S.A. 2A:34-23, Rule 4:42-9(a)(1) and Rule 5:3-5(c). This decision is within the sound discretion of the court. Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990). When awarding counsel fees, a

> court must consider whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party in pursuing or defending the action; the nature and extent of the services rendered; and the reasonableness of the fees.

[Mani v. Mani, 183 N.J. 70, 94-95 (2005) (emphasis omitted).]

At trial, plaintiff was awarded a portion of her attorneys' fees because, in the judge's estimation, defendant's positions on certain issues lacked factual and legal support, which unnecessarily prolonged the proceedings. On reconsideration, the judge explained he did not award the full amount sought by plaintiff at trial because, although defendant raised two issues—the BKLM Entities and the 2020 tax liability—that lacked a factual or legal basis, there were other valid issues at trial including child support and distribution of the sale of the marital residence. In light of our deferential standard of review, we discern no basis to disturb the trial court's decision.

Because we find no error in the trial judge's comprehensive and well-reasoned decision, we discern no abuse of discretion in the denial of defendant's motion for reconsideration. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

To the extent we have not expressly addressed any remaining issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1391-23