**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2562-23

IN THE MATTER OF THE
ESTATE OF JAMES M.
MURPHY, deceased.

_____

Argued March 5, 2025 – Decided June 26, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. P-315046-21.

John M. Loalbo argued the cause for appellant Robert Brown (Schumann Hanlon Margulies, LLC, attorneys; John M. Loalbo, of counsel and on the brief).

Respondent Frances Nicotra has not filed a brief.

PER CURIAM

Appellant Robert Brown, as executor of the estate of Robert Taylor (Taylor's estate), appeals the Chancery judge's March 11, 2024 order approving the formal accounting of court-appointed administrator and attorney for the estate of James M. Murphy (Murphy's estate), Frances Nicotra, Esq. Because

we determine the court did not misapply its discretion, primarily as appellant waived the opportunity to file any written exceptions to the proposed accounting and elected not to challenge the requested counsel fees and commissions, we affirm.

I.

A.

On June 3, 2012, Taylor executed a power of attorney (POA) designating Murphy as his attorney in fact. On May 1, 2017, Murphy, purporting to act as Taylor's POA, liquidated a security account belonging to Taylor and placed the $798,609.43 in proceeds into a TD Bank account owned jointly by Taylor and Murphy, with Murphy possessing a right of survivorship. Taylor died testate on May 6, 2017, leaving $100,000 as a specific bequest to Murphy. At the time of his death, Taylor's bank account maintained a $865,343.93 balance.

On June 30, 2017, Murphy withdrew $275,000 from the TD Bank account, giving $250,000 to his future son-in-law, Peter Charon, and placing the remaining $25,000 into his own account. Murphy died testate less than two weeks later, and the probate court appointed Nicotra as the administrator of Murphy's estate in February 2018. In April 2018, Nicotra, on behalf of Murphy's

2

estate, requested from Taylor's estate the $100,000 specific bequest to Murphy in Taylor's will.

Later that year, appellant, on behalf of Taylor's estate, filed a verified complaint in the Law Division against Nicotra as the administrator of Murphy's estate, demanding the return of the $798,609.43 Murphy had transferred into the TD Bank account. The matter proceeded to arbitration, and on February 27, 2020, the arbitrator awarded $798,609.43 to Taylor's estate, reasoning that despite the account's right of survivorship, the money belonged in Taylor's estate "because of [the] fiduciary rela[tionship]" between Taylor and Murphy.

The parties reached a settlement requiring Murphy's estate to pay Taylor's estate $750,000 by providing it with $650,000 and relinquishing its right to the $100,000 bequest. As consideration for the agreement, Taylor's estate waived "any other claims against" Murphy's estate "including but not limited to other moneys that might have been taken from the TD Bank account."

During this time period, Nicotra filed a separate complaint on behalf of Murphy's estate seeking to identify Murphy's estate's creditors and to obtain a declaration that the estate was insolvent. The matter was consolidated with the Law Division matter brought by Taylor's estate and both were transferred to the Chancery Division.

 A-2562-23

By December 6, 2021 order, the Chancery judge determined: (1) Murphy's $798,609.43 transfer to the joint TD Bank account constituted a "tortious conversion of . . . Taylor's property," (2) the settlement agreement was legally enforceable, and (3) Murphy's estate was "not entitled to a credit of compensation for 'services' rendered." Accordingly, the court ordered Murphy's estate to "immediately return to . . . Taylor['s estate] . . . $388,216.43," adding "that any residuary assets in . . . Murphy['s estate] be liquidated by the [a]dministrator and applied to the obligations of the settlement agreement."

B.

In November 2023, Nicotra, again as administrator of Murphy's estate, filed a complaint and order to show cause (OTSC) in the Chancery Division, seeking "approval of the accounting" appended to her submission. She additionally sought a release as administrator of Murphy's estate, "declaration [that] the estate [wa]s insolvent, approval of counsel fees/commissions, and a reimbursement of funeral expenses to . . . Charon." Importantly, Nicotra attached to the complaint accounting documents purporting to verify the assets in Murphy's estate, including $32,581.22 designated for commissions under N.J.S.A. 3B:18-14, and invoices reflecting an outstanding balance of $44,218.65 in attorney's fees.

Nicotra's appended "Certification of Legal Fees" stated:

1. I am an attorney in good standing admitted to practice law in the State of New Jersey since 1992. I have familiarity with cases similar to the within action since approximately 1994 and I have practiced in this area. My hourly rate of $325.00 is reasonable given my experience in practicing law and familiarity with this area of practice.

2. The estate has been quieted as determined by judgment in an unsecured creditor litigation, accounting and assessment for income and estate taxes with an accountant and tax/criminal attorney—all of which the time for appeal has passed. The value of the estate has been determined with these factors in mind.

3. There are assets available to pay legal fees. Accordingly, I respectfully request that my counsel fees in this matter be reimbursed to me. My fees are attached to this certification as an invoice.

4. I intend to submit a supplemental certification as to additional legal fees/costs to close the matter. In addition, there is an open invoice with the tax attorney/criminal attorney to be paid. The remainder shall go to the federal taxing authority.

   On the basis of the above, I hereby respectfully request reimbursement to date in the amount of $44,218.65 as counsel fees, plus statutory commissions in the amount of $33,120.76 based upon the value of the estate at ($860,593.09—amount taken in plus $275,000 gift weeks in advance of passing).

5

Nicotra represented that she filed income and inheritance tax returns, and, although the State "issued a tax waiver based on insolvency[,] . . . [t]he federal taxing authority declared taxes, penalties, and interest totaling $541,424.50, clearly leaving the estate insolvent and unable to pay the taxing authority its full amount due."  An October 23, 2023 IRS notification confirmed the amount owed.

The complaint alleged that the statutory order of priority required Murphy's estate to first satisfy its federal tax obligations, which was "of such amount that any objection filed hereto by the ordinary judgment creditor would be inconsequential to the outcome that the estate is insolvent and the . . . creditor will not recover on account of the amount in the [e]state and the insurmountable tax liability."  Nicotra also attached a copy of a check dated July 12, 2017 to what is presumably the funeral home in the amount of $13,346, with the subject line "Frederick Charon," alleging this evidenced Charon's payment of funeral costs requiring reimbursement from the estate.

On January 18, 2024, appellant filed opposition objecting to Nicotra's accounting and requesting a schedule to file formal exceptions.  Specifically, he argued the nearly $800,000 in claimed assets "never belonged to . . . Murphy," relying upon the court's 2021 order deeming the transfer a tortious conversion

and asserting that the money must be returned to Taylor's estate "less $388,216.4[3] previously paid to" it.

Regarding attorney's fees, appellant claimed that because courts will not allow attorney's fees for fiduciary activities capable of being performed by a non-attorney fiduciary, citing In re Estate of Wharton, 47 N.J. Super. 42 (App. Div. 1957), Nicotra should not be allowed to recover fees as her invoices showed entries, including email exchanges, that could be performed by non-attorneys. Appellant also contended Nicotra's affidavit of services did not comply with Rule 4:42-9(b) and RPC 1.5(a) in that she failed to address all the pertinent factors in her certification as mandated by these rules.

Nicotra filed a reply on January 22, 2024, deeming appellant an "unsecured creditor," and arguing that caselaw indicates "[i]ll-gotten gains of this nature . . . are taxable income and subject to federal and state income tax." Further, she asserted "the taxes alone far exceed[ed] the residuary and the unsecured creditor [wa]s interfering with the taxing authorities' ability to maximize its collection" and Nicotra's "ability to close this matter." Thus, Nicotra averred Murphy's estate "must be administered" and "wound down with payment in accordance with the priority of creditors." She also indicated she would "update [her] certification of services with the statement that the work

required . . . an attorney [as] it was . . . so specialized that it exceed[ed] the skill of a non-lawyer."

On January 26, 2024, the court held a hearing addressing Nicotra's complaint and OTSC. The court reviewed the proposed accounting, reflecting a $174,888.92 closing balance, from which funeral costs were still owed to Charon. It acknowledged the $541,424.50 in taxes owed, noting this "support[ed] the argument that [Murphy's estate] [wa]s insolvent." Nicotra informed the court the estate balance was "no longer a[t] [$]175[,000]" but now at $135,958.27. The court confirmed with Nicotra that Charon paid Murphy's funeral expenses, but that she was unable to identify the source of funds he used for payment. Nicotra claimed the exact amount "was blurred out" as she "could[ not] get a good copy on it," but that it was "roughly[] $15,000," without further explanation. The court acknowledged Nicotra's request for fees "of [$]44,000 and change" and the request for commissions in the amount of $32,586.29.

Appellant's counsel renewed the request to file formal exceptions to the proposed accounting and asked that the court set a filing schedule. The court responded indicating "[t]hat's what [they were] doing today." Appellant's counsel indicated his understanding that "typically . . . a schedule would be set for exceptions" and that he "need[ed] to get into detail regarding . . . the

8

attorney's fees and . . . go through the accounting in much more specific detail." The court again responded, "[T]hat's what we're supposed to be doing today."

Nicotra argued her fee application was justified as the work required her "to gather facts and . . . separate the wheat from the chaff on the facts in this matter," asserting all her entries constituted billing for "legal work." Citing N.J.S.A. 3B:18-6, the court acknowledged "an attorney serving as a fiduciary can also be compensated for [reasonable] legal fees" and noted its discretion when reviewing the application for fees. The court referenced both Rule 4:42-9(b) and RPC 1.5(a) as governing its analysis of the reasonableness of an attorney's affidavit.

The court then identified the "real issue in the case . . . [a]s the priority of claims if and when [the] estate is arguably insolvent," identifying N.J.S.A. 3B:22-2 as the "controlling statute," giving priority to payment of reasonable funeral expenses. The court stated:

> I am uncomfortable with the status of what may or may not be owed to . . . [Charon]. It's completely permissible . . . to have the decedent make not only his or her own funeral arrangements, but to prepay for those arrangements. Absent some confirmation that funds transferred inter vivos by . . . Murphy to . . . [Charon] were earmarked for the funeral, we have no idea why he was transferring that money and . . . it could have been for something completely different.

. . . The only thing that's certain is that the funeral expenses were paid. They appear to have been paid by . . . [Charon] and whether . . . he used . . . Murphy's funds to do so is all up [i]n the air. So . . . I can't make a determination of what reasonable funeral expenses are[,] . . . so that's an impediment to me granting at least part of this application.

Explaining the statutory priorities for multiple creditors and hearing argument as to the insolvency of Murphy's estate, the court next made the following findings:

Clearly in this case the debts outweigh . . . the funds that are available. I, therefore, find . . . [Murphy's] [e]state insolvent.

Under [N.J.S.A.] 3B:22-2, whoever paid the funeral expenses is entitled to reimbursement first, but that remains an open issue because I'm not satisfied that we know exactly how much it was and where the source of the payment came from, so that's going to require further attention by the administrator. . . .

Then and only then will I make a determination on the commissions and the fees deemed reasonable. I don't require any supplemental application on the fee. I believe it is fine.

As to appellant's request to file formal exceptions, the court addressed appellant's counsel, stating:

I would have expected your exceptions and your opposition to the fee application to have been laid before the [c]ourt today. I will give you another two weeks to file . . . exceptions and if you really are

10

serious about attacking this fee application, you better be more specific because your objection at this point is rather scant, too scant for me to really give it too much credence. . . .

Having not been provided with any examples and specific line-by-line objections or . . . exceptions . . . to the email exchanges, I'm not prepared to make a ruling or make any assumptions. My inclination was to overrule your objection, but to the extent that you seem to be under some misapprehension that you have more time to be specific, I'll give it to you. So any specific objection to the fee application and anything else in the accounting is due by February [ninth] . . . and Ms. Nicotra, you'll have time to respond by February [sixteenth]. I'm not calling you back in. I'm not going to have further legal argument.

The court then explained the "only issue remaining is the priority of the legal settlement," and because there remained "the open issue as to the funeral expenses," the court "allow[ed] [Nicotra] to supplement [her] papers" and decided to "keep the whole [matter] open, but [that] no further appearances [we]re required." The court gave Nicotra until March 1, 2024 to supplement her accounting as to the funeral expenses issue, and "[i]n the interim" would await appellant's "more specific challenges to the fee application."

The court issued a scheduling order reflecting its permitting the following supplemental submissions: (1) Taylor's estate's supplemental opposition to "the application" due on or before February 9, 2024; (2) Nicotra's reply due no later

than February 16, 2024; and (3) Nicotra's amended accounting, "specifically as to the issue of reimbursement of funeral expenses to . . . Charon."

On February 9, 2024, appellant submitted a letter to the trial court informing that Taylor's estate "w[ould] not be challenging the legal fees or commissions of . . . Nicotra based on [the court's] January 26, 2024 ruling as no benefit would result to . . . Taylor['s estate] from such exercise."  Appellant did not file any formal exceptions, and Nicotra did not provide any supplemental information.

The trial court issued its decision in a March 11, 2024 order,[1] noting "no opposition h[ad] been filed" and incorporating its reasons stated on the record. The court ordered approval of:  (1) the $33,581.22 in statutory commissions pursuant to N.J.S.A. 3B:18-14, to be paid from Murphy's estate; (2) $48,525.20 in counsel fees to be paid from Murphy's estate; and (3) Nicotra's formal accounting.  It also declared Murphy's estate "insolvent with no liability to

---

[1]  The order indicates it was "unopposed" and entered for "[r]easons stated on[ ]the record on March 1, 2024."  However, appellant claims in his brief on appeal that he "made diligent efforts . . . seeking any and all dates the [t]rial [c]ourt may have placed such reasons on the record," and was given four possible dates, including January 26, 2024; March 1, 2024; March 6, 2024; and March 11, 2024. Nonetheless, according to appellant, the trial court apparently "placed no statement of reasons for its March 11, 2024 [o]rder on the record on any of those dates."

[Nicotra]"; and ordered that Nicotra be relieved of all duties upon payment of the remaining balance in the estate account to the federal taxing authority.

Appellant now appeals the court's March 11, 2024 order.

## II.

## A.

Referencing his counsel's January 18, 2024 letter to the trial court, appellant contends he requested to file exceptions to Nicotra's accounting, but that the court "completely disregard[ed]" this request and his renewed request during the OTSC hearing. Appellant argues he "asked the . . . [c]ourt on two occasions to set a schedule to submit [f]ormal [e]xceptions" but that it did not afford him that opportunity. Asserting that "litigation deadlines should be extended in the interests of justice and to avoid punishing litigants unfairly," appellant argues the court erred in not only denying his request to file formal exceptions, but also in "disallow[ing] discovery and any further oral argument" on that issue.

We review a trial court's decision regarding an application for formal accounting for an abuse of discretion. See In re Koretzky, 8 N.J. 506, 535 (1951). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested

13

on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). "When examining a trial court's exercise of discretionary authority, we reverse only when the exercise of discretion was 'manifestly unjust' under the circumstances." Newark Morning Ledger Co. v. N.J. Sports & Exposition Auth., 423 N.J. Super. 140, 174 (App. Div. 2011) (quoting Union Cnty. Improvement Auth. v. Artaki, LLC, 392 N.J. Super. 141, 149 (App. Div. 2007)).

Rule 4:87-8 expressly provides:

> In all actions for the settlement of accounts, other than plenary actions, any interested person may, at least [five] days before the return of the [OTSC] or within such time as the court allows, serve the accountant written exceptions, signed by that person or his or her attorney, to any item in or omission from the account, including any exceptions to the commissions or attorney's fees requested. The exceptions shall state particularly the item or omission excepted to, the modification sought in the account and the reasons for the modification.

We have reviewed the record and are not persuaded that the court denied appellant the opportunity to advance formal exceptions. To the contrary, the record demonstrates the court provided multiple opportunities to do so and appellant elected not to file written exceptions or challenges. First, at the OTSC

14

hearing or prior to it, appellant, in possession of Nicotra's proposed accounting and request for counsel fees and commissions, could have raised formal exceptions but did not choose to do so. Instead, appellant submitted a general opposition, requesting that the court set a schedule for submitting and addressing formal exceptions.

Next, at the hearing, although the court was resistant to appellant's counsel's request for a scheduling order to file written exceptions, it allowed an extension of time for appellant to supplement his submissions with formal exceptions to Nicotra's application. The court then memorialized in a written order a schedule for the parties to file their submissions, which included time for appellant to "file supplemental opposition to the application on or before February 9, 2024." Appellant failed to file exceptions within the time permitted.

Further, and critically, appellant's counsel, by letter dated February 9, 2024, advised that appellant would "not be challenging the legal fees or commissions," and appellant never filed exceptions to the accounting. We conclude the letter confirms appellant's strategic election not to avail himself of the court's extension of time to challenge Nicotra's application or accounting.

Litigants may not intentionally forego the opportunity and invitation to mount opposition they deem potentially futile, and then claim a court impeded

A-2562-23

the right to file it. Under these circumstances, we discern no error in the court's recognizing "no opposition h[ad] been filed" and approving Nicotra's formal accounting. We perceive no basis to construe the court, or anyone other than appellant, prevented the filing of formal exceptions or challenges to the application.

B.

Appellant presents additional arguments that the court improperly granted Nicotra's application for attorney's fees, contending Nicotra's filing was deficient and the court failed to conduct the proper analysis. We review an award of counsel fees and costs for an abuse of discretion. See In re Will of Landsman, 319 N.J. Super. 252, 271 (App. Div. 1999). We disturb the trial court's determination "only on the rarest occasions, and then only because of a clear abuse of discretion." Hansen v. Rite Aid Corp., 253 N.J. 191, 211-12 (2023) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). "An appellate court may reverse a trial court's award of fees and costs . . . when the court's decision 'was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Id. at 12 (quoting Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016)).

In awarding counsel fees, courts must make specific findings, addressing the reasonableness of the request for fees and its reasons for the award. <u>Rule</u> 4:42-9(b) states in relevant part:

> [A]ll applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a). The affidavit shall also include a recitation of other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, and an itemization of disbursements for which reimbursement is sought.

RPC 1.5(a) prescribes that "[a] lawyer's fee shall be reasonable," and sets forth the following factors in determining reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;

> (5) the time limitations imposed by the client or by the circumstances;

> (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[RPC 1.5(a)(1)-(8).]

The RPC factors "list is not exhaustive and all factors will not be relevant in every case." Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009).

Importantly, "an award of counsel fees may be affirmed even if the affidavit of services is deficient." Elizabeth Bd. of Educ. v. N.J. Transit Corp., 342 N.J. Super. 262, 272-73 (App. Div. 2001); see also Dotsko v. Dotsko, 244 N.J. Super. 668, 679-80 (App. Div. 1990) (upholding a counsel fee award finding failure to provide a required certification was harmless). "[A] technically defective affidavit will not preclude the fee allowance based thereon." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 4:42-9(b) (2025).

In estate matters, "[i]f the fiduciary is a duly licensed attorney of this State and shall have performed professional services in addition to his [or her] fiduciary duties, the court shall, in addition to the commissions[,] . . . allow him [or her] a just counsel fee." N.J.S.A. 3B:18-6. Undeniably, an attorney cannot be paid from an estate "for services which did not require professional legal skill[s]." Wharton, 47 N.J. Super. at 46. However, "[l]egal services rendered in

connection with the preparation and filing of the account, answering the exceptions filed by the appellant, and other matters leading to the approval of the account, are unquestionably of the kind for which compensation should be given." Id. at 47.

Against this backdrop we address appellant's claims, but we do so in light of appellant's express abandonment of any challenge to the requested fees, confirmed by letter to the trial court, and by his failure to file exceptions to Nicotra's submission. Appellant explained the court determined "no benefit would result . . . from such exercise."

With respect to the claim that Nicotra, and subsequently the court, failed to define more specifically the nature of emails and communications reflected in Nicotra's billing entries, we are satisfied that appellant waived his challenge to the nature of the work performed, and the court's award was not a misuse of discretion.

The record supported the court's award. Nicotra, in her January 22, 2024 reply to appellant's general objection to her fee submission, explicitly stated that the work she performed could "only be done by an attorney and . . . it was of such a nature so specialized that it exceed[ed] the skill of a non-lawyer." At the OTSC hearing the court addressed appellant's informal objection and recognized

19

"[a]n email exchange certainly can be clerical . . . but it also may necessitate an attorney composing and sending the email so as to protect attorney/client privilege." The court indicated appellant had not supplied any specific line-by-line objections, noting that the opposition appellant had filed was "too scant" to merit "credence," thus providing additional time to submit challenges. As appellant thereafter announced he no longer challenged Nicotra's application, we conclude the court did not err under the circumstances in finding Nicotra's fee submission unopposed and granting it in its entirety.

Appellant further contends the court failed to properly assess the reasonableness of Nicotra's proposed attorney's fees under Rule 4:42-9(b), highlighting Nicotra's deficient affidavit of services and the court's failure to "analyze and make specific findings regarding . . . Nicotra's legal fees[,] which . . . [it] was required to do."

Nicotra submitted her certification of legal fees and her itemized invoices corresponding to her request. She indicated she would "update [her] certification" that the work performed could only be done by an attorney. Although it does not appear she provided that supplemental certification, she represented at the OTSC hearing that she was willing to amend her certification to "indicate the extreme burden of a solo practitioner and that . . . since 2017

[she had] absolutely not been able to accept cases and work on other matters."

She also explained the case presented "novel legal issues."

At the OTSC hearing, the court recognized the relevant law and RPC 1.5 factors, stating:

> RPC 1.5, . . . the ethical corollary to <u>Rule</u> 4:42-9 and its subparts[,] provides that fees can only be awarded when they are reasonable, and rather than read the entire rule into the record, there are no less than eight factors that affect the reasonableness determination; time and labor, likelihood that the acceptance of the employment would preclude other employment, fees customarily charged in the . . . vicinage, and then time limitations that may have been imposed by the client, that's not really a factor here, and a few others. . . . [T]here was no fee—or retainer agreement. This was an appointment by the court.

The court invited appellant to submit challenges, but did not require that Nicotra supplement her submission. The court further indicated that, given its concern about the outstanding issue of the funeral expenses paid by Charon, it would also await further determination of whether funeral cost reimbursement by Murphy's estate would be proper and afford that claim priority before determining fees and commissions.

We acknowledge that, although Nicotra addressed most of the RPC 1.5(a) factors in her OTSC argument and written submissions, she never submitted an affidavit conforming to <u>Rule</u> 4:42-9(b)'s requirements; we also recognize the

21 <span style="float:right">A-2562-23</span>

court never itemized in detail its specific findings regarding the reasonableness of the requested fees and award. Although the court noted in its order that reasons were given on the record on March 1, 2024, appellant asserts "[n]o such statement of reasons was found."

However, in these unique circumstances, in which the record reflects: (1) appellant expressly communicated his intention not to challenge Nicotra's fee application; (2) the court acknowledged the governing legal standard and addressed the fee request at the OTSC hearing; and (3) Nicotra in other forms addressed the reasonableness of and basis for the fees sought, we deem any error harmless. See Rule 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result."). Appellant did not ultimately contest the fees before the trial court, strategically determining the exercise would not benefit Taylor's estate. He cannot now be heard to claim harm, in direct contradiction of that representation before the trial court.

C.

Appellant argues for the first time on appeal that Murphy's $798,609.43 transfer of Taylor's funds into their joint account with a right of survivorship meant that after Taylor's death, the money subsequently passed to Murphy "as

A-2562-23

an inheritance" and never should have been considered "income" for tax purposes. He accordingly requests this court reverse the trial court's order approving the final accounting and remand and direct that Nicotra on behalf of Murphy's estate file with the IRS a "protective claim for refund" of any taxes improperly claimed and paid, according to appellant, in 2024 on the transfer of funds erroneously listed as income to Murphy.

As appellant failed to raise this claim before the trial court, we decline to consider it here. See State v. Arthur, 184 N.J. 307, 327 (2005) ("An appellate court ordinarily will not consider issues that were not presented to the trial court . . . .").

D.

Finally, appellant asserts he is "unable to properly address the . . . issue of reimbursement of funeral expenses" as Nicotra failed to comply with the trial court's January 26 order compelling her to "file an amended accounting specifically as to the issue of reimbursement of funeral expenses to . . . Charon."

N.J.S.A. 3B:22-2 gives priority to payment of "[r]easonable funeral expenses," when "assets of the estate are insufficient to pay all claims in full." At the OTSC hearing, the court expressed it was unable to "make a determination of . . . reasonable funeral expenses" given the uncertainty

regarding "the status of what may or may not be owed to . . . Charon." The court thereafter ordered Nicotra to provide definitive proof of Charon's payment of funeral expenses to resolve the ambiguity in order to finalize the accounting. Indeed, at the OTSC hearing Nicotra referenced a "roughly[] $15,000" sum required to reimburse Charon, but raised further confusion as to whether the estate in fact owed any repayment. The court indicated it would await Nicotra's resolving "the issue of the funeral expenses, from soup to nuts, meaning what did it cost, what did . . . Murphy give to . . . [Charon], and if we know what those gifts . . . or . . . transfers were for." The court suggested that if it did not receive this breakdown, it would "have to draw an inference" and contact Charon to provide "proof of payment" to bestow it "a greater comfort level before [it] c[ould] declare this [e]state closed and relieve [Nicotra] of [her] duties."

On this record, we cannot determine whether or how the court resolved the issue, as its final order fails to reference funeral expenses as a separate item. Nevertheless, given that the court, in the absence of formal exceptions, approved the proposed final accounting and adjudicated the estate insolvent, we deem any error harmless. The record does not contain proof that Charon was paid funds from Murphy's estate to reimburse for any funeral costs; consequently, the claimed funeral expenses likely never reduced the estate, in turn interfering with

24

funds that might have been available to appellant to begin to satisfy Taylor's estate's judgment. Further, given Murphy's estate's insolvency and the other creditors' priority claims to any available funds, any failure to resolve the issue of $15,000 in funeral expenses with specificity was not clearly capable of producing an unjust result as Taylor's estate sat below the IRS, which was still owed a sum of $541,424.50, well in excess of the funds remaining in Murphy's estate.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division